COMMISSIONERS OF SALINE CO. v. JOHN ANDERSON.

OFFICER *De Facto; Right to Fees and Salary; Liability of County.* Where a person is in the possession of the office of county clerk, under color of title, and is the county clerk *de facto*, and claims to be the county clerk *de jure*, and the board of county commissioners pays to him the quarterly salary due to the rightful incumbent of such office, *held*, that the county clerk *de jure* has no action against the county board for such salary; and this, notwithstanding the fact that the county board may have known, at the time they paid such salary, that the question as to the title to said office was in litigation; and notwithstanding the fact that the county clerk *de facto* may be insolvent.

*Error from Saline District Court.*

THE district court, at April Term 1877, gave judgment in favor of *Anderson*, plaintiff, and the *Board of County Commissioners*, defendant, brings the case here.   The subjoined opinion contains a statement of the facts.

*John Foster*, county attorney, for plaintiff in error.

*C. A. Hiller*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by John Anderson against the board of county commissioners of Saline county, for $900, claimed to be due as salary as county clerk from January 10th, to October 10th, 1876.   Judgment was rendered in favor of the plaintiff and against the defendant for $549.28, and the defendant now brings the case to this court for review.   The facts of the case, so far as it is necessary to state them, are substantially as follows: At the general election held in November 1875, John Anderson and Fred H. Wildman were opposing candidates for the office of county clerk in and for said county. Anderson received a majority of all the votes cast, and the canvassers awarded to him the certificate of election.   Great irregularities however occurred in holding said election, and for this reason Wildman contested the same.   The contest court decided in favor of Wildman, awarding to him the certificate, and annulling the certificate previously issued to Anderson.   The certificate to Wildman was issued January 10th 1876.   Wildman immediately qualified and took possession of the office.   Anderson then took the case to the district court on petition in error, where the judgment of the contest court was reversed, and the office awarded to Anderson.   Wildman then brought the case to the supreme court · on petition in error, where the judgment of the district court was affirmed, December 5th 1876.   (*Wildman v. Anderson*, 17 Kas. 344.)   Wildman in the meantime held said office, and

<span style="margin">Statement of the case.</span>

received the salary and fees from said 10th January 1876 up to October 10th. But as soon as the case was decided in the supreme court, he delivered the office up to Anderson. The county commissioners had during all this time full knowledge of all these proceedings, but nevertheless paid said salary to Wildman as aforesaid. Wildman was and is insolvent; but whether the county commissioners were aware of this fact, we think the record does not show. There are some other facts in the case, but we do not think that it is necessary to state them. Upon the foregoing facts the following question arises:

Are the county commissioners, as representatives *Salary of county clerk: liability of county.* of the county, liable to Anderson for the salary which they have already paid to Wildman? We think they are not. *Benoit v. Auditors of Wayne County,* 20 Mich. 176; *Smith v. Mayor of N. Y.,* 37 N.Y. 518; *Conner v. Mayor of N.Y.,* 5 N.Y. 285; *Parker v. Supervisors,* 4 Minn. 59; *McAffee v. Russell,* 29 Miss. 84, 97; *Wheatly v. City of Covington,* 11 Bush. 18, 22; *The Queen v. Mayor of Cambridge,* 12 Adolphus & Ellis, 702. It is held otherwise in California: *People, ex rel. Dorsey, v. Smyth,* 28 Cal. 21; *Carroll v. Siebenthaler,* 37 Cal. 193. But Chief Justice Campbell of Michigan says, in the Michigan case, (page 183,) that, "the California authority, (*Dorsey v. Smyth,* 28 Cal. 21,) is based entirely upon New York cases which are not law in the latter state, and which were made in disregard of the previous decision in Conner's case. It has no reasoning of its own, and does not seem warranted by principle." The decision in the other California case, that of *Carroll v. Seibenthaler,* is founded upon that of the previous case of *Dorsey v. Smyth.*

But returning to the case at bar: Wildman was an officer *de facto.* He held the office under *color of title.* He took possession of the same in good faith, under a certificate of *Officers de facto.* election duly issued, under a judgment of a court duly rendered, under a judgment of a court of competent jurisdiction, and a judgment that was not finally overthrown until December 5th 1876, when the decision of the supreme court was rendered, which was long after the

10th of October 1876 — up to which time only Wildman received said salary. Such an officer as Wildman was, may hold the office and perform all the duties thereof pending any litigation concerning the same. *The State v. Durkee*, 12 Kas. 308, 314; *Leach v. Cassidy*, 23 Ind. 449. And all his acts connected with the office will be valid so far as the public and third persons are concerned, unless they are void for some other reason than merely that he is only an officer *de facto*. This last proposition is so nearly axiomatic that it needs no citation of authorities to sustain it. As Chief Justice Campbell says, in the Michigan case, ( p. 181,) "The doctrine of the validity of the acts of officers *de facto* has been carried as far as possible. In *The State v. Williams*, 5 Wis. 308, it was held to make good the approval of a statute by a governor usurping that office. In *Venable v. Curd*, 2 Head, (Tenn.) 582, it was carried to the questionable extent of making good the action of a court under an invalid statute. In *Doty v. Gorham*, 5 Pick. 487, where an officer *de facto* had made a sale, it was held that in a suit against himself, with others, for removing property thus sold, he could justify under the sale. In *Leach v. Cassidy*, 23 Ind. 449, it was held that a school officer *de facto* could not have his title questioned in an application made by him for a *mandamus* to compel the payment to him of school moneys by local officers. In *Desmond v. McCarthy*, 17 Iowa, 525, it was held that in a replevin by an officer *de facto*, to recover the papers belonging to his office, which had been withheld on a claim that he was not the lawful officer, his title could not be questioned, but that the only inquiry on that must be in proceedings to oust him." See also, *Hunter v. Ferguson*, 13 Kas. 463, 475; *Rheinhart v. The State*, 14 Kas. 318; *Higby v. Ayers*, 14. Kas. 331, 338.

Now as Wildman was an officer *de facto*, holding under color of title, every person had a right to recognize him as a legal and valid officer, and to treat him as such. Protection to individuals, and the public. The public, the county, the county commissioners, and private individuals, had a right to do business with him as an officer, and to pay him for his services,

if they chose, without taking any risk of having to pay for such services a second time. It might be greatly to the interest of the public, or of the individuals doing business with such officer, to pay him when his fees or salary become due; and should they not be allowed to consult the interest of the public and their own interest to so pay him? It is not their fault that he is wrongfully in the possession of the office; and how are they to know whether he is in the posses- sion of the office rightfully, or wrongfully? Are they bound to know who is entitled to the office in advance of any final adjudication of the question by the courts? Are they bound to anticipate the decision of the courts? And are they bound to decide the question for themselves, as it thus comes up incidentally and collaterally in the payment of fees or salary? And if they should determine that the courts would eventu- ally decide against the officer *de facto*, must they refrain from paying him any fees or salary at perhaps a great loss to them- selves, or to the public? Judge Cooley says, in said Michi- gan case, (page 187,) that "The public, who have an interest in the continuous discharge of official duty, and whose necessities cannot wait the slow process of a litigation to try the title, have a right to treat as valid the official acts of the incumbent, with whom alone, under the circumstances, they can transact business. This rule is an obvious and necessary one for the protection of organized society; for, as was said in *Weeks v. Ellis*, 2 Barb. 325, the affairs of society cannot be carried on unless confidence were reposed in the official acts of persons *de facto* in office. And private individuals, in controversies between themselves, are not permitted to ques- tion the acts of an officer *de facto*, for the further reason that to do so would be to raise and determine the title to his office in a controversy to which he was not a party, and in which he could not be heard." Now, the interest of the public in the "*continuous discharge*" of official duties, would authorize the payment of the legal fees or salary for the performance of such official duties to the person performing the same; and to allow a person not in the possession of the office, but who

claims to be entitled thereto, to sue for the fees or salary thereof, would be to allow the question of the title to the office to be raised and determined against the officer *de facto* "in a controversy in which he was not a party, and in which he could not be heard." Such certainly could not be allowed. But if this suit can be maintained, then it would be allowed. The salary of a county clerk is payable quarterly; (Laws of 1875, page 137, § 5,) and if Anderson can maintain this action, then he could have maintained an action against the county commissioners for the first quarter's salary on and at any time after April 10th 1876, for it was due then, although Wildman was still in the possession of the office, and although his title to the office had not yet been finally adjudicated, but was still pending in the courts. It may be that Wildman could not have recovered the salary in an action brought by himself, (though upon this question we do not wish to express any opinion;) for it may be, that as between himself and others, where he has to rely upon his own title to the office the question of his title could be raised, and his title held to be void; though upon this question we express no opinion. But that is not this case. He is not suing for his salary in this case. He is not a party to this suit, nor has he any interest therein. The question of his title to the office arises between third parties in this case—between Anderson and the county; and does not arise but only incidentally and collaterally. We do not think that the question can be raised and litigated between such parties and in such a manner. It must be remembered that Wildman was not a mere usurper; but he was an officer *de facto*, having possession of the office under color of title. What would be the rule if he were a mere usurper, it is not necessary for us to decide in this case. All that we now decide is, that where a person is in possession of the office of county clerk, under color of title, and is the county clerk *de facto*, and claims to be the county clerk *de jure*, and the board of county commissioners pays to him the salary due to the rightful incumbent of such office, the county clerk *de jure* has no action against the county board for

such salary, and this, notwithstanding the fact that the county board may have known at the time they paid said salary that the question as to the title to the office was in litigation, and notwithstanding the fact that the county clerk *de facto* may be insolvent. The remedy of the county clerk *de jure* in such a case is an action against the county clerk *de facto*.

The judgment of the court below will be reversed, and the cause remanded with the order, that judgment be rendered in favor of the defendant below, and against the plaintiff below, for costs.

All the Justices concurring.