[Civil No. 226.   Filed May 25, 1888.]

[S. C. 18 Pac. 273.]

E. O. SHAW, Plaintiff and Appellant, v. COUNTY OF PIMA, Defendant and Appellee.

1. OFFICE AND OFFICERS—SALARIES—DE FACTO OFFICERS.—Where a county has paid to a *de facto* officer, holding under color of title, salary for the time actually spent in performance of his duties such payment is complete defense to suit for the same salary by the *de jure* officer.

APPEAL from a Judgment of the District Court of the First Judicial District in and for the County of Pima. Wm. H. Barnes, Judge. Affirmed.

The facts are stated in the opinion.

Cameron H. King, Goodrich, Smith, Street & Goodrich, Thos. D. Satterwhite and Geo. L. Hood, for Appellant.

The salary and emoluments of an office are incident to the title to the office. See dissenting opinion of Cooley, Judge, in *Wayne Co.* v. *Benoit,* 20 Mich. 176, 4 Am. Rep. 382; *People ex rel. Morton* v. *Tieman,* 30 Barb. 193; *People* v. *Hopson,* 1 Denio, 579; *Riddle* v. *The County of Bedford,* 7 Serg. & R. 386. A *de jure* officer has the sole right to the salary of his office, and may recover the same from the public treasury, although it has been paid to an intruder. *People* v. *Nostrand,* 46 N. Y. 375 and 382; *People* v. *Tieman,* 8 Abb. Pr. 35 and 361; *Mayor* v. *Flagg,* 6 Abb. Pr. 296 and 302; *Carroll* v. *Siebenthaler,* 37 Cal. 193; *People* v. *Smyth,* 28 Cal. 21; *People* v. *Carter,* 29 Barb. 208; *Nichols* v. *McLean,* 63 How. Prac. 448; *Stadler* v. *City of Detroit,* 13 Mich. 346; *Selby* v. *City of Portland,* 14 Or. 243, 12 Pac. 377.

Payment to another even if he were a *de facto* officer is no defense to an action by the officer *de jure* for his salary. *People* v. *Collins,* 7 Johns. 549; *Hull* v. *Luther,* 13 Wend. 491; *Mayor* v. *Flagg,* 6 Abb. Pr. 296; *People* v. *Smyth,* 28 Cal. 21; *People* v. *Oulton,* 28 Cal. 44; *People* v. *Brennan,* 30 How.

Pr. 418; *Comstock* v. *City of Grand Rapids*, 40 Mich. 397; *People* v. *Miller*, 24 Mich. 459, 9 Am. Rep. 131.

The reversal of a judgment removing an officer from office restores him thereto without need of any further order. *Phares* v. *State*, 3 W. Va. 567, 100 Am. Dec. 777. The granting of a new trial vacates and sets aside the judgment. *Thompson* v. *Smith*, 28 Cal. 527.

"It is well settled that a *de facto* officer cannot recover the compensation or salary annexed to such office. That such salary is incident to the title to the office and not to its occupation and exercise." *Burke* v. *Edgar*, 67 Cal. 184, 7 Pac. 488; *People* v. *Potter*, 63 Cal. 127; *People* v. *Smyth*, 28 Cal. 21; *People* v. *Oulton*, 28 Cal. 44; *McVeany* v. *Mayor*, 80 N. Y. 185, 36 Am. Rep. 600; *Mayor and Alderman* v. *Woodward*, 1 Central Law Jour. 587; *Shannon* v. *Baker*, 33 Ind. 390.

If a person is legally entitled to an office of which he is not in actual possession, it is his property and he cannot be restricted to the compensation provided therefor but may demand the office itself. *Glasscock* v. *Lyons*, 20 Ind. 1, 83 Am. Dec. 299.

Special attention is called to the decision in the case of *Andrews* v. *City of Portland*, 79 Me. 484, 10 Am. St. Rep. 280, 10 Atl. 458.

H. R. Jeffords, District Attorney, for Appellee.

PORTER, J.—The facts of this case are these: There was an election held in the county of Pima, on November 4, 1884, for the office of sheriff. Afterwards the board of supervisors canvassed the votes, and declared plaintiff elected, and delivered the certificate to him. Thereafter he qualified and gave the required bond, and after such qualification, the clerk of the district court granted him a certificate that he had so qualified and given such security. At the time plaintiff was to take the office, to-wit, January 1, 1885, he served the last-named certificate upon R. H. Paul, the former and then sheriff, and entered upon the discharge of the duties of the office. On the 15th of December, 1884, Paul filed his state-

ment in the district court, contesting the election of Shaw, and on the trial of such contest, on the 3d day of January, 1885, judgment was pronounced in favor of Paul. Thereupon, Paul, on the 3d day of January, 1885, qualified, gave bonds, and entered upon the duties of the office. There was no stay of proceedings on the judgment, nor was there any appeal taken therefrom to the supreme court. The salary was paid to Paul by the board of supervisors. On the 9th of January, 1886, Shaw served notice of motion for new trial in this contest case before the district court, and on the hearing on April 3, 1886, a new trial was granted, that Paul, on the 3d of April, 1886, appealed from the order granting a new trial to the supreme court, and then and there gave an undertaking on appeal in the sum of $300. The court ordered that in case Paul desired to retain the office, pending the appeal, he should give a bond in the sum of $5,000 to operate as a *supersedeas* in addition to the $300 bond, or, in lieu thereof, deposit with the clerk the sum of $3,600, with privilege of withdrawal upon filing the bond. On 10th April, 1886, Paul deposited the $3,600, whereupon a stay of proceedings was granted. On 14th June, 1886. Paul and Shaw stipulated in writing that the appeal be dismissed, and that the money deposited may be withdrawn, and the order granting the *supersedeas* be vacated, and pursuant to the stipulation, on the 19th July, 1886, the appeal was dismissed, and the money withdrawn, and it was further and expressly stipulated that Shaw should release Paul from any debt or obligation or demand or cause of action which might be due from Paul for withholding the office from Shaw. On the 9th day of July, 1886, Shaw re-entered upon the discharge of the duties of the office, and continued to discharge the same until the expiration of the term. The salary of the sheriff was $7,500 a year, payable quarterly. On the 23rd of December, 1886, plaintiff presented his demand in writing, verified, for the sum of $9,375, to the board of supervisors, and on the 6th day of January, 1887, the board disallowed the same. Whereupon plaintiff brought suit in the district court against Pima county, and judgment was had for de-

fendant. Plaintiff moved the court for a new trial, which motion was denied, and from which denial this appeal is taken.

For the decision of this case it is unnecessary to determine the first question suggested by defendant whether the district court could grant a new trial of election contests. It will be observed that there was a judicial determination of the rights to this office on the 3d day of January, 1885, and that thereafter on same day Paul entered upon the duties of the office; that not until the 9th day of January, 1886, did Shaw move for a new trial, and the new trial was granted on the 3d day of April, 1886. Should the county, after Paul had been declared by a competent court to be entitled to the office, with no notice to the board of supervisors of further action, have withheld his salary while he was performing the duties of the office? While this judgment continued in force he was the sheriff *de jure*. "They paid him the salary under the judgment, as they were bound to do, and the law protects them in this payment." Viewing Paul, however, as only the sheriff *de facto*, in *Dolan* v. *Mayor*, 68 N. Y. 274, 23 Am. Rep. 168, decided in 1877, the court says: "We are of opinion that payment to a *de facto* public officer of the salary of the office, made while he is in possession, is a good defense to an action brought by the *de jure* officer to recover the same salary after he has acquired or regained possession. * * * If fiscal officers, upon whom the duty is imposed to pay official salaries, are only justified in paying them to the officer *de jure*, they must act at the peril of being held accountable in case it turns out that the *de facto* officer has not the true title; or, if they are not made responsible, the department of the government they represent is exposed to the danger of being compelled to pay the salary a second time. * * * Disbursing officers charged with the payment of salaries, have, we think, a right to rely upon the apparent title, and treat the officer who is clothed with it as the officer *de jure*, without inquiring whether another has the better right. Public policy accords with this view." "Public offices are created in the interest and for the benefit of the

public. Such at least is the theory upon which the statutes creating them are enacted and justified. Public and individual rights are to a great extent protected and enforced through official agencies, and the state and individual citizens are interested in having official functions regularly and continuously discharged. The services of persons clothed with an official character are constantly needed. They are called upon to execute the process of the courts, and to perform a great variety of acts affecting the public individuals. It is important that the public offices should be filled, and that at all times persons may be found ready and competent to exercise official powers and duties. If, on a controversy arising as to the right of an officer in possession, and upon notice that another claims the office, the public authorities could not pay the salary and compensation of the office to the *de facto* officer, except at the peril of paying it a second time, if the title of the contestant should be established, it is easy to see that the public service would be greatly embarrassed and its efficiency impaired. Disbursing officers would not pay the salary until the contest was determined, and this in many cases would interfere with the discharge of official duties. *McVeany* v. *Mayor,* 80 N. Y. 185, 36 Am. Rep. 600, decided in 1880, reviewing the New York cases, says: "It is then to be deduced from the cases in this state that, as a general principle, the rendition of official service must precede a right to demand and recover the compensation given by law to the officer; that the disbursing officer of a municipality is protected from a second payment of that compensation, and so is his superior, when he has once made payment to one actually in the office, discharging the duties of it with color of title, with his right thereto not determined against him by a competent tribunal; that when there has been such adjudication, any amount of compensation for services rendered not paid to him is due and payable to the one adjudged to be the officer *de jure,* and may be recovered by the latter of the municipality." Let us test the case at bar by that case. Paul held the office for one year, with the adjudication in his favor. Then, that far he was entitled to the salary. He

"had color of title" at least. The giving a new trial was not
an adjudication of his right to hold the office, but, granting
that it was, on the appeal to the supreme court by Paul the
court required a *supersedeas* bond in the sum of $5,000, or,
in lieu thereof, a deposit of $3,600, and the money was depos-
ited. Thus Shaw was protected to the amount of salary
thereafter accruing, and this seems an answer to part of the
reasoning of Judge Cooley in his dissenting opinion in *Au-
ditors* v. *Benoit*, 20 Mich. 176, 4 Am. Rep. 382, decided in
1870, in which he says: "What a farce would that be, to hold
that when the county authorities are in possession of a sum of
money which rightfully belongs to the defendant, they may
excuse themselves from paying it over by giving him a cause of
action to the same amount against another person, who may or
may not be able to respond, and who, in any event, is to be
made to pay only after the expense of a suit at law." The ma-
jority opinion in that case is conclusive of the case at bar,
which decides "that it cannot be possible that a county can be
liable to pay the same salary twice over, and if the present
claimant can demand the money, it must be because the pay-
ment to Miller was not warranted. And this can only be upon
the assumption that the county authorities were bound to pre-
vent the defeated party from getting the salary until the
suit was decided. Whatever may be the case in regard to
a mere intruder, without any claim or color of title, there
can be no doubt that a person actually obtaining office with
the legal *indicia* of title is a legal officer until ousted, so far
as to render his official acts as valid as if his title were not
disputed." *People* v. *Miller*, 24 Mich. 458, 9 Am. Rep. 131,
is another phase of *Auditors* v. *Benoit*, and decides that the
salary could be reversed against the wrongful holder of the
office. *Mayfield* v. *Moore*, 53 Ill. 428, 5 Am. Rep. 52, is to
the same effect.

*Commissioners* v. *Anderson*, 20 Kan. 298, 27 Am. Rep.
171 was a case very similar to the case at bar. Anderson
and Wildman were opposing candidates for county clerk.
Anderson secured a majority of the votes, and he was awarded
the certificate of election. Irregularities occurred in the
election, and Wildman contested. The contest court decided

in favor of Wildman, awarding him the certificate, and annulling Anderson's. Wildman qualified and took possession of the office. The case then went to the district court, and the judgment of the contest court was reversed. Wildman then appealed to the supreme court, when the judgment of the district court was affirmed, upon which decision he delivered the office to Anderson. The county commissioners had knowledge of the contest, but paid the salary to Wildman. The court says: "Are the county commissioners, as representatives of the county, liable to Anderson for the salary which they have already paid to Wildman? We think not." *Auditors* v. *Benoit, supra; Smith* v. *Mayor,* 37 N. Y. 518; *Conner* v. *New York,* 5 N. Y. 285. And *Smith* v. *Mayor* holds that no claim could be brought for salary or perquisites covering any period when the claimant was not actually in office, and this was put upon the ground that they are the reward of express or implied services, although wrongly hindered from occupying a position in which he might render them. And so it is held in *Conner* v. *New York,* 5 N. Y. 285. It is held otherwise in *Dorsey* v. *Smyth,* 28 Cal. 21. Chief Justice Campbell, in the Michigan case, says, the California case is based upon New York cases, which are not law in the latter state, and which were made in disregard of the previous decision in *Conner's Case.* It has no reasoning of its own, and does not seem warranted on principle." And says further that "there is an entire absence of authority elsewhere in favor of such a principle." The facts of *Dorsey* v. *Smyth* were these: Dorsey was contesting the election against Platt. Brown was the then incumbent, and while the contest was going on he refused to give up the office. The office was awarded to Dorsey, but before the end of the contest Brown received the salary, paid to him in obedience to a *mandamus* issued by the district court. Judge Sanderson's opinion was: "Having the title to the office, the relator is entitled to the salary from the commencement of the term for which he was elected, and he cannot be deprived of it by the usurpation of Brown or the wrongful payment of the same to the latter by the direction of a court in a proceeding to which he was not a party." But in the case before us

there was a judgment of the district court in favor of Paul, in which Shaw was a party litigant, and from which judgment there was no stay of proceedings nor any appeal taken, of which judgment it must be presumed the board of supervisors had knowledge, and in accordance with which they rightfully paid the salary to Paul. Then, after one year had elapsed, and a new trial was granted, it must be further presumed that they knew of the appeal and the requirement of security in order for Paul to continue in office. While the appeal granting a new trial was pending, Shaw, of his own volition, released the hold he had on Paul for the salary. He had the bird in hand, viz., $3,600, but turned it loose in the bush. We do not think the court erred in refusing to strike out the portions of the agreed statement of facts, viz., the stipulation and agreements made between Paul and Shaw, and the judgment and orders in the district court of *Paul* v. *Shaw.* Counsel for appellant confidently rely on a late case decided by supreme court of Maine, (*Andrews* v. *City of Portland,* 79 Me. 484, 10 Am. St. 280, 10 Atl. 458,) which seems to sustain their views, in which it is remarked that the cases are irreconcilable. That was a case where the mayor and aldermen themselves removed the city marshal. On *certiorari* to the mayor and aldermen the proceedings for removal were quashed. The city had notice of the plaintiff's claim, and that the title to the office was in litigation. *Nichols* v. *MacLean,* 101 N. Y. 526, 54 Am. Rep. 730, 5 N. E. 347, quoted in the opinion in the *Portland Case* as sustaining the court, only goes to the question of holding the illegal holder of the office liable for the salary, and that is not controverted in any of the cases to which was above alluded. It is so conceded.

We repeat that it was the duty of the board of supervisors to pay Paul, while no action was pending, during the time he was in the performance of the duties of the office, and Shaw was sleeping on his rights, and when apprised of a further contest by the order granting a new trial they were secure in a continued payment because the money was up to save Shaw harmless. Judgment is affirmed.

Wright, C. J., and Barnes, J., concur.