D. E. BROWN, Appellant, v. TAMA COUNTY, Appellee.

County Officers: COMPENSATION PENDING CONTEST OF OFFICE.  Where
     a county pays an officer *de facto,* during his incumbency, the
     salary provided by law, the rightful officer after obtaining
     possession of the office by judgment of court cannot recover
     from the county the salary for the same period; and the rule
     is not altered by reason of the fact that the *de facto* officer
     received a *per diem* paid from the public treasury.

*Appeal from Tama District Court.*—HON. G. W. BURNHAM,
                              Judge.

FRIDAY, FEBRUARY 12, 1904.

The petition states the case.—*Affirmed.*

*Caldwell & Walters* for appellant.

*R. P. Kepler* and *C. B. Bradshaw* for appellee.

WEAVER, J.—The petition alleges that, at the general election for the year 1899, plaintiff and one De Long were opposing candidates for the office of superintendent of schools for Tama county; that the board of canvassers declared plaintiff elected by a majority of three votes, and that thereupon De Long instituted a contest as provided by law, which contest was still pending and undetermined on January 1, 1900, on which day "plaintiff had a bond prepared and took the oath of office, but because of the pendency of said contest did not file said bond until April 12, 1900." On January 2, 1900, the court of contest decided that De Long had received a majority of the votes and was duly elected. From this decision plaintiff appealed to the district court, where the finding in favor of De Long was affirmed, but on further appeal to this court the finding of the district court and court of contest was reversed. On being remanded to the district court the case was again tried, and final judgment entered in plaintiff's favor on June 21, 1901. Three days thereafter plaintiff's bond was approved by the board of supervisors, and he entered upon the duties of the office. Plaintiff alleges that from the beginning of his term—January 1, 1901—he was at all times ready and able and willing to take possession of the office and discharge its duties, and was prevented from so doing by the contest aforesaid. He further avers that during this interval De Long was actually engaged in the performance of said duties an aggregate of four hundred and sixty-three days, during all of which time plaintiff was entitled to the fees, salaries, and emoluments of said office, and would himself have performed the labors and duties thereof had he not been prevented by the wrongful contest above mentioned. He therefore demands judgment against the county for the *per diem*

compensation provided by law on the basis of the number of days' services performed by De Long during the term for which plaintiff was elected. Attached to the petition is a copy of plaintiff's bill or claim, as presented by him to the board of supervisors before the institution of this action. It sets out an itemized statement of the time during which De Long is alleged to have been engaged in performing the duties of superintendent of schools after plaintiff became entitled to the office, and is verified by an affidavit as follows:

"The above and foregoing bill shows the number of days in which one C. A. De Long was actually engaged in the performance of the duties of county superintendent of schools of Tama county, Iowa, as a *de facto* officer from January 1, 1900, until June 24, 1901, and is the actual statement of the fees, salary, and emoluments of said office for that period; that during said period this claimant, D. E. Brown, was entitled to said office and was the *de jure* officer, but was wrongfully excluded from said office by the said C. A. De Long by means of a contest wrongfully instituted by the said C. A. De Long, and carried on in the courts until said contest was finally determined on the 21st of June, 1901. All of which was and is well known to the members of this honorable board of supervisors both severally and collectively.

"State of Iowa, Tama county, ss.: I, D. E. Brown, on oath do say that the above account is just and true and the service rendered as herein set forth, and that the same has not been paid, or any part thereof, to said D. E. Brown.

D. E. Brown."

To this pleading the defendant interposed a demurrer substantially as follows: (1) It shows that plaintiff did not qualify or become entitled to the office until June 24, 1901; (2) it shows that, during all the time for which plaintiff demands pay, De Long was the actual incumbent of the office, and performed all its duties, and plaintiff performed no official service whatever; (3) while it shows that plaintiff received a majority of the votes and was given a certificate of election by the board of canvassers, it does not show a suffi-

cient or legal excuse for his failure to qualify and take possession of the office and perform its duties; and (4) it states no fact showing that plaintiff was wrongfully excluded from the office, or prevented from performing the duties thereof.

This demurrer was sustained by the trial court, and plaintiff, electing to stand upon his petition without amendment, judgment was entered against him for costs, and he appeals.

To better define the issue of law thus presented, the parties stipulate that the defendant county had paid De Long the full *per diem* compensation allowed by law to superintendents of schools for each and every day of service rendered by him in said office during the period between January 1, 1900, and June 24, 1901, and that such payments were made by order of the defendant board of supervisors with full knowledge on their part of the pendency of the contest on appeal. It is also agreed that the demurrer be considered and disposed of as if the stipulated facts were set out in the petition.

I. County superintendents of schools are regularly elected each odd-numbered year, and are entitled to hold office for two years. Code, section 1072. The term of office regularly begins upon the first Monday in January after an election is had. Code, section 1060. Each superintendent is required to give an official bond in a sum to be fixed by the board of supervisors. Except when prevented by sickness or inclemency of weather, he is required to qualify before noon of the first Monday in January after his election by taking the prescribed oath of office and giving the required bond. Code, section 1177. It is made a misdemeanor for any officer who is required to give bond to act in such official capacity without having first given such bond. Code, section 1197. The right to hold a county office to which a person has been declared elected may be contested before a tribunal duly organized for hat purpose. Code, title 6, chapter 7. From the decision of this tribunal an appeal may be taken, but, if the party appealing is already in

possession of the office, the appeal will not prevent his ouster under the judgment appealed from, unless he gives bond, in at least double the probable compensation of the office for six months, conditioned that he will prosecute his appeal without delay, and if the judgment appealed from be affirmed he will pay over to the successful party all compensation received by him while in possession of said office after said judgment was rendered. Code, section 1222. The foregoing constitutes all the statutory provisions which need be looked to in determining the legal relations of plaintiff and contestant, in respect to the office, pending the litigation between them. We have cited them, not because they afford any specific remedy for the wrongs of which plaintiff complains, but to make clear that this state has no statute which prevents due consideration by us of the rules and principles which have been recognized in this class of cases by courts of other jurisdictions.

II.    With the admitted facts and the statutory provisions applicable thereto thus before us, the central question to be considered may be stated as follows: Where, during the incumbency of a county officer *de facto* under color of title, the county pays him the salary provided by law, can the officer *de jure,* after obtaining possession of the office under final judgment of ouster, maintain an action against the county for payment to himself of the salary for the same period? The decision of the courts upon this and cognate questions have developed a marked lack of harmony, and have been said by Mr. Freeman to be "incapable of reconciliation." The same distinguished annotator, while expressing his own dissent from the rule, says: "If, during the incumbency of an officer *de facto,* and before any judgment of ouster has been rendered against him, the city or county of which he is such an officer *de facto* pays him the salary of the office, a very decided preponderance of authorities sustains the position that by means of such payments the right of the officer *de jure* to collect his salary from such city or county is lost." See note to *Andrews v. Portland* (Me.) 10 Am. St. Rep. 280,

which cites: *Auditors v. Benoit,* 20 Mich, 176 (4 Am.
Rep. 382); *State v. Clark,* 52 Mo. 508; *Smith v.
Mayor,* 37 N. Y. 518; *Westberg v. City,* 64 Mo. 493; *Mc-
Veany v. Mayor,* 80 N. Y. 185 (36 Am. Rep. 600); *Dolan
v. Mayor,* 68 N. Y. 274 (23 Am. Rep. 168); *Steubenville
v. Culp,* 38 Ohio St. 23 (43 Am. Rep. 417); *Shannon v.
Portsmouth,* 54 N. H. 183; *Commissioners v. Anderson,* 20
Kan. 298 (27 Am. Rep. 171). The only cases noted by Mr.
Freeman as sustaining the opposing view are: *Andrews v.
Portland, supra; Memphis v. Woodward,* 12 Heisk. 499 (27
Am. Rep. 750); *Savage v. Pickard,* 14 Lea, 46; *People v.
Smyth,* 28 Cal. 21; *Carroll v. Siebenthaler,* 37 Cal. 193.

It is to be said of several, if not all, of the cases last cit-
ed, that they present a materially different state of facts than
we have here to pass upon. For instance, the plaintiff in
the *Andrews Case* was duly appointed and qualified city mar-
shal, and had long been in the actual possession of the office,
when he was wrongfully excluded therefrom by the action of
the city officers, after which he not only remained ready to
perform, but offered to perform, the duties to which he had
been appointed; and it was held that he was entitlel to re-
cover his salary for the full term, although the marshal *de
facto* had also been paid. So, also, in the *Memphis Case,* a
person had been duly elected hospital physician, had taken
the oath, and his official bond had been accepted, and there-
after, when calling upon his predecessor to take possession
of the office, the latter asked and was granted a few hours'
delay for the purpose of removing his family from the build-
ing, and improved the opportunity thus given to obtain a writ
of injunction by means of which he kept the rightful claim-
ant out of possession for several months. Assuming, for the
present argument, that under such exceptional circumstances
the city or county cannot avoid liability to the rightful officer
by paying the salary of the office to a flagrant usurper, we
think a different rule may obtain where the officer *de facto* is
in possession under a *prima facie* good title. In the case be-
fore us the plaintiff never took possession of the office till af-

ter the final decision, June 21, 1901, nor had over tendered
his official bond or demanded possession of the office until
April 12, 1901, after the decision of his appeal to this
court. During all this period De Long was in the actual oc-
cupancy of the office under the judgment of the court of con-
test and of the district court, giving him an apparently good
title (subject, of course, to the decision of the appeal). So
far as is shown, while all knew of the pendency of the appeal,
De Long and the board of supervisors and the disbursing of-
ficers of the county acted in entire good faith, believing him
the rightful occupant of the office. Under such circumstances,
is there any sound principles of law or policy requiring the
court to compel the public, which has once in good faith paid
the full value of the services to the person who performed
them, to again pay the same debt, for the same services, to
one who confessedly did not perform them? ·

The opinion by Andrews, J., in the *Dolan Case, supra,*
is instructive on this point. Speaking of the offi··
who received the salary of the office before being finally oust-
ed, it says: "The appointment of Keating was not a plain
usurpation, without legal pretext or color of right. The sta-
tute was obscure, and the power of the justice to remove an
incumbent at pleasure and make a new appointment was a
question upon which the courts differed, and, although it has
been finally decided that it did not exist, Keating was an of-
ficer *de facto* within the authorities." After conceding that
the *de facto* officer had no right to the salary, and could not
have compelled payment to himself by suit, the opinion
proceeds: "But it does not follow from the conclusion that
defendant could have successfully defended an action brought
by Keating to recover the salary of assistant clerk that it was
not justified in treating him as an officer *de jure* when claim-
ing it and paying it upon that assumption. It is clear that if
the city could rightfully pay the salary to Keating during
his actual incumbency, and has paid it, it cannot be required
to pay it again to the plaintiff. We are of the opinion that
payment to a *de facto* public officer of the salary of the office,

made while he is in possession, is a good defense to an action brought by the *de jure* officer to recover the same salary after he has acquired or regained possession. * * * It is plain that in many cases the duty imposed upon the fiscal officers of the state, counties, or cities to pay official salaries could not be safely performed unless they are justified in acting upon the apparent title of claimants. The certificate of boards of canvassers certifying the election of a person to an elective office is *prima facie* evidence of the title of the person whose election is certified. But it often happens that, by reason of irregularities in conducting the election, or the admission of disqualified voters, the apparent title is overthrown, and another person is adjudged to be rightfully entitled to the office.. This can seldom if ever be ascertained except after judicial inquiry. * * * If fiscal officers upon whom is imposed the duty to pay official salaries are only justified in paying them to the officer *de jure,* they must act at the peril of being held accountable in case it turns out that the *de facto* officer has not the true title; or, if they are not made responsible, the department of the government they represent is exposed to the danger of being compelled to pay the salary the second time. It would be unreasonable, we think, to require them, before making payment, to go behind the commission, and investigate and ascertain the real right and title. Disbursing officers charged with the payment of salaries have, we think, the right to rely upon the apparent title and treat the officer who is clothed with it as an officer *de jure,* without inquiring whether another has a better right. Public policy accords with this view. * * * * This does not deprive the party who has been wrongfully deprived of the office of a remedy. He may recover his damage for the wrong against the usurper."

Entirely parallel in all material facts with the case at bar is *Commissioners v. Anderson, supra,* decided by the Supreme Court of Kansas. The contest there was over the election to the office of county clerk. Anderson received the certificate of election, and took possession of the office. The con-

test court decided for the contestant, Wildman, who then oust-
ed Anderson.   On final decision of the appeal the judgment
of the contest court was reversed and Anderson's title to the
office was sustained.   Meanwhile, during the pendency of the
appeal, Wildman held possession of the office, and drew the
salary accruing from time to time.   After being restored to
the office, Anderson brought suit to compel payment to him-
self of the salary during the time he was out of possession.
The court, by Valentine, J., in holding there was no right of
recovery, says: "'Now, as Wildman was an officer *de facto,*
holding under color of title, every person had a right to rec-
ognize him as a legal and valid officer and treat him as such.
The public, the county, and private individuals had a right
to do business with him as an officer, and to pay him for his
services, if they chose, without taking any risk of having to
pay for such service a second time.   *   *   *   It is not their
fault that he is wrongfully in possession of the office, and how
are they to know whether he is in possession of the office right-
fully or wrongfully ?'"

In *Auditors v. Benoit, supra,* another case of similar
character, the Michigan court, after a very thorough examin-
ation of the question both upon principle and precedent, reach
the same conclusion.   In still another parallel case, *State ex
rel. v. Milne.,* 36 Neb. 301 (54 N. W. Rep. 521, 19 L. R. A.
689, 38 Am. St. Rep. 724), the authorities are again mar-
shaled with the same result, the court saying: "The doctrine
that the acts of a *de facto* officer are valid, as far as they af-
fect third parties and the public, is so familiar that no cita-
tion of authorities is necessary to show it.   The acts of such
officer are sustained upon the ground that to question them
would devolve upon any person transacting business with the
officer the duty determining at his peril the right of the in-
cumbent to the office he holds.   Third parties assume no such
risk.   They are not bound to know that the person exercising
the functions of a public office under color of authority is
rightfully in possession of the office, but are warranted in

recognizing him as the legal and valid officer, and are justified in dealing with him as such. If a person pays to a *de facto* officer fees allowed by law for his services, he is protected, and will not be required to pay them a second time to the officer *de jure*. We think the same principle should govern cases like the one at bar. Cashman was the *de facto* county treasurer of Greely county, and performed the duties of the office under color of title from January 9, 1900, to October 28, 1901, during which time he received all the emoluments which attached to the office. He took possession of the office in good faith by virtue of the decision in his favor by the contest court, and continued to occupy the office until the respondent was declared to be entitled to the same by virtue of a judgment of ouster obtained by him against Cashman on the final determination of the contest case. The county board, in settling with Cashman, and allowing him the fees and salary provided by law for the period during which he performed the duties of the office, the same having been made before respondent came into possession, had a right to rely upon the apparent title of Cashman, and to treat him as an officer *de jure*. The board was justified in allowing him the emoluments of the office upon that assumption, and the county cannot be compelled to pay them twice." Bearing in the same direction, also, are: *Shaw v. Prima* (Ariz.) 18 Pac. Rep. 273; *Gorman v. Boise County,* 1 Idaho, 655; *Parker v. Dakota,* 4 Minn, 59 (Gil. 30); *Michel v. New Orleans,* 32 La. Ann. 1094; *McAffee v. Russell,* 29 Miss. 84; *Chandler v. Hughes Co.,* 9 S. D. 24 (67 N. W. Rep. 946).

It is not to be denied that this rule may sometimes result in hardship to one who has been wrongfully excluded from an office to which he has been duly elected or appointed, but the hardship comes not from any wrong which has been done him by the state, county, or city whose officer he is, but from the wrong or fault of the individual who, without sufficient grounds, has disputed his right and taken the emoluments which rightfully he should have received. The public is interested in having the offices provided by law filled at all times by persons to whose official acts full faith and credit

may be given. Individual citizens and other officers having business with any given office should be and are protected in dealing with the person actually and notoriously in possession of the same under color of title, and peaceably exercising its functions. Even though it be well known that a contest is pending, the *de facto* officer may go on discharging the duties of the office, and third persons and the public may deal with him as the officer *de jure*. They are not required to enter into the contest, nor to feel that the validity of the officer's acts in the performance of the duties of the office hangs in suspense upon the outcome of the contest. If the compensation of the office be one like that of the office of justice of the peace or constable, to which no salary is attached, but consists wholly of items of fees and costs earned and collected from day to day, the person who is liable therefor may pay them to the officer who performs the service, without fear of being required to pay them again to a successful contestant who afterwards establishes his right to such office. This proposition, we presume no one will dispute; and it is difficult to conceive why a different principle should be applied to a case where the *de facto* officer receives his compensation by way of a *per diem* allowance out of the public treasury. Neither the county which pays the officer's charges from its public treasury, nor the private citizen who pays the officer's fees from his private purse, is a party to the contest, and neither is bound to anticipate the outcome, or to deal with the *de facto* officer at its peril. The litigation is the private and individual concern of the parties thereto, and not until they have fought their contest to a finish and a final adjudication is had, and the rightful claimant is in position to assume the actual occupancy of his office, need the citizen or county refuse to treat with the *de facto* incumbent as if he were an officer *de jure*. Any other rule would tend to uncertainty, confusion, and endless litigation in the conduct of public affairs. The party to whom such a contest brings undeserved injury or loss must look for his damages to the person who caused it.

We do not attempt any general review of these cases. As indicated at the outset, they are not to be harmonized; and believing, as we do, that the rule, which is conceded even by its critics to be sustained by a preponderance of authority, is also consonant with sound reasoning and with public policy, we adopt and apply it. That rule is not inconsistent with any previous decision of this court. The case of *McCue v. Wapello*, 56 Iowa, 698, cited by appellant, is no exception to this statement. The action there was brought by one who had been an officer *de facto*, but had been ousted, to recover for services rendered while serving in such *de facto* capacity. A recovery under such circumstances would be, we think, wholly without precedent. The New York court, in the *Dolan Case*, recognizes this principle, and, while holding that the officer *de jure* cannot, after obtaining possession of his office, compel payment to himself of a salary which has once been paid to the officer *de facto* while actually in possession, distinctly affirms the rule of the *McCue Case*, that an officer cannot compel the payment of the salary to himself without showing good title to the office, and that all salary and charges for official services by said officer accruing during the *de facto* incumbency, and remaining unpaid when the wrongful occupant is finally ousted, are payable only to the officer *de jure*. The rule, to which we adhere, is not to be invoked by the *de facto* officer for his own advantage, as McCue sought to do in the case referred to. As the court there says: "These doctrines operate only for the protection of the public. They cannot be invoked to give him the emoluments of the office as against the officer *de jure*." In the *McCue Case* plaintiff had, while still in possession of the office, received payment from the county in a considerable sum for official services, and had Stewart, the officer *de jure*, brought suit after his restoration to compel the county to pay this sum a second time, then we should have a case in point with the one at bar. The distinction is in our judgment a proper one, and the principle of the earlier case can well be adhered to without in any manner calling for a reversal in the case before us.

We have also held that the right to recover the compensation or salary attached to an office "depends upon the performance of the duties, or, at least, there must be possession of the office in fact, as distinguished from the mere right of possession." *Jayne v. Drorbaugh,* 63 Iowa, 717. The county is something more than a mere stakeholder between the contending parties, and its rights in the premises are not necessarily dependent upon the adjudication between the contending claimants. It is to the public interest that it shall be permitted to recognize officers *de facto* in possession of their offices under color of right, and until a final adjudication in favor of a contestant it may treat the occupants as officers *de jure,* by an action in their own behalf, could not compel such recognition. In the language of Campbell, C. J., in *Auditors v. Benoit, supra*: "Nothing but actual incumbency can make a legal officer, however much he may be entitled to obtain the office. * * * The only valid proceedings in the name of the office must be those of the actual incumbent." If the public generally are entitled to deal with the incumbent (even pending contest) without fear that such dealings will be invalidated by a subsequent adjudication of the right to the office in favor of a contestant, it is equally proper and important that the organized public —state, county, or city—may also deal with him with equal safety. As said by Chief Justice Campbell in the case above cited: "There may be cases where the redress of the aggrieved party will be difficult. But the public convenience is not on that account to be sacrificed. It is important to have the right man in office, but it is more important to deal safely with those who are actually in place. And there would be a great hardship in allowing public interests to be thrown into confusion whenever a contest arises for office. It would invite rather than prevent litigation if every claimant understood that by setting up a claim to an office he could stop the salary of the incumbent."

The conclusion thus reached renders unnecessary the consideration of other questions presented in argument.

The judgment of the district court is AFFIRMED.