STATE *ex rel.* BYRD *v.* SCOTT COUNTY *et al.*

(*Knoxville*, September Term, 1944.)

Opinion filed December 2, 1944.

JENNINGS & O'NEIL, of Knoxville, for Roscoe Byrd.

S. F. FOWLER, of Knoxville, for Scott County et al.

MR. JUSTICE NEIL delivered the opinion of the Court.

This suit has its origin in an election contest between Roscoe Byrd and C. W. Wright for the office of County

Judge of Scott County. These men were candidates for said office in the regular August election in 1942. The Board of Election Commissioners awarded a certificate of election to C. W. Wright, who appeared to have been elected on the face of the returns. The Governor of the State issued him his commission as County Judge upon the presentation of the certificate of election. Immediately thereafter the relator Byrd instituted a contest of the election. It was tried before the Chancellor sitting as a special tribunal for the hearing and disposition of election contests. The Chancellor held that Byrd had been elected and was entitled to the office. Upon appeal by Wright this Court affirmed the decree of the Chancellor. The Governor thereupon issued to Byrd a commission as Judge of the County Court. The relator was inducted into office on April 11, 1944. The present suit was brought in the Chancery Court against Scott County and the members of the Quarterly Court of Scott County to recover the sum of $3,373, which represents the amount of salary due him from September 1, 1942, to April 11, 1944. The bill prayed for an alternative writ of *mandamus*, for a decree for the above mentioned amount, and for general relief.

Upon the issuance and service of process seven members of the Quarterly Court filed an answer in which it is averred that C. W. Wright was commissioned as Judge of the County Court on September 1, 1942, and that he performed the duties of said office from that time until the termination of the election contest; that Wright was paid the regular salary and that relator Byrd rendered no service and performed no official duties during that time. The answer denied that Byrd was entitled to the relief sought. A *pro confesso* was taken as to four members of the Quarterly Court who filed no answer and made

no defense. At the hearing of the cause on August 14, 1944, Scott County, through its County Attorney, filed a formal answer submitting the matters in issue to the judgment of the Court. On August 28, 1944, Scott County, by permission of the Chancellor, filed another answer adopting the answer that had been filed by the seven members of the Quarterly County Court. Prior to the hearing the relator was permitted to amend his original bill by averring that he had been, at all times ready and willing to perform the duties of the office to which he had been elected. The case was heard on a stipulation of facts. The Chancellor sustained the bill and entered a decree in favor of relator Byrd for the amount which was claimed to be due. The defendants excepted and perfected an appeal to this Court. They have filed with the record the following assignment of errors:

"1 The Chancellor erred in holding that the relator Roscoe Byrd was entitled to the salary provided by law to be paid the County Judge of Scott County, Tennessee, for the period from September 1, 1942, to April 11, 1944, and erred in pronouncing a decree against the defendant Scott County in the sum of $3,373, representing the amount of said salary for said period, and the costs of the cause.

"2. The Chancellor erred in ordering and decreeing that a peremptory writ of *mandamus* issue against the defendant members of the Quarterly County Court to assemble and by resolution to provide for and authorize the issuance of a warrant to the relator for said sum as salary for said period, and to make a proper levy and to include same in the budget and taxes to be levied and collected for the ensuing year.

"3. The Chancellor erred in finding and adjudging that the relator Roscoe Byrd was duly elected to the said

office of County Judge of Scott County at the regular election held in August, 1942."

The foregoing assignments raise the question of the liability of the County for payment of the relator's salary as County Judge pending his contest of the election in which his adversary Wright was awarded the certificate of election. This is the only question before us. It is earnestly contended by counsel for defendant that the weight of authority does not support the decree of the Chancellor; that the County should not be compelled to pay two salaries, one to the *de facto* officer and the other to the *de jure* officer who was adjudged to have been legally elected; that the defendant County was perfectly innocent of responsibility for this situation and in no way contributed to its creation.

The liability of a county for payment of a salary to one who has been given a certificate of election and who has entered upon the duties of his office, although his right to the office is being contested, is not an open question. We have expressly held in *McMillan* v. *Shipp*, 180 Tenn. 290, 174 S. W. (2d) 469, in which many cases were cited and discussed, that the holder of the office under a certificate of election is entitled to the emoluments thereof pending the contest. It must be noted in the instant case (the fact is a part of the stipulation) that the relator Byrd was at all times ready and willing to perform the duties of the office of County Judge. Counsel for the defendant has filed an able and exhaustive brief in which numerous cases are cited and distinguished. Contention is made that "the fact that relator was disabled from occupying the office, through no fault of his own, is immaterial." We find it unnecessary to discuss this phase of the question now before us except as an incident to complainant's right to have a decree in his favor.

Many of the cases cited in support of defendant's contention relate to the right of a contestant to enjoin one who has received the certificate of election from performing the duties of the office, particularly *Churchwell* v. *White*, 171 Tenn. 543, 106 S. W. (2d) 225, and other cases. These cases are not determinative of the question here involved. They merely go to the right to hold the office pending the contest. Finally, in support of defendant's insistence as to the non-liability of Scott County for the payment of relator's salary from the beginning of the term of office to which he was elected, reference is made to 55 A. L. R., pp. 997-1014, as well as a supplemental annotation to 59 A. L. R., p. 117. We recognize the fact that the rule of non-liability is announced in a number of foreign jurisdictions, but the rule is to the contrary in Tennessee and we are content to re-affirm the principle which supports the decree of the Chancellor in the instant case.

In *Mayor, etc., of City of Memphis* v. *Woodward*, 59 Tenn. 499, 27 Am. Rep. 750, the question was first presented to this Court. In that case Woodward was shown to have been entitled to hold the office of City Hospital Physician, which was vacant, from the date of his election and also to the emoluments of the office from that date. One Lynch had continued in the enjoyment of the office, receiving its salary of $225 per month. He had obtained an injunction restraining the City of Memphis from "interfering with him in the enjoyment of the office." Chief Justice NICHOLSON, speaking for the Court, held that Woodward was entitled to his salary from the date of his election even though the City had paid Lynch the same salary. An effort is made to distinguish that case from the facts of the instant case with some degree of plausibility. Whether there is a right of a *de jure* officer to sue the

*de facto* officer for the amount of salary which the latter drew, and which had been wrongfully paid him, rather than sue the City, is not important. Suffice it to say that the Court held the City of Memphis liable for the salary that had been wrongfully denied to complainant Woodward.

The question was again presented to the Court in *Graham* v. *England*, 154 Tenn. 435, 288 S. W. 728, in which *Mayor, etc., of City of Memphis* v. *Woodward, supra*, was cited and approved. In that case N. R. Barham, who had held the office of Circuit Judge for eight years, was a candidate for re-election in August, 1926, and was opposed by W. H. Denison. Upon the face of the returns Denison was elected. Barham contested the election and the Governor, being apprised of the contest, declined to issue a commission to either Barham or Denison. Instead he appointed J. A. England to act as temporary judge pending the contest. Thereupon the Comptroller of the State filed a bill in the Chancery Court seeking a declaration from the Court as to whether he should issue a payable warrant to England for his salary. It was there held that the temporary judge was entitled to the same compensation as the regular judge. Speaking further upon the point as to the payment of the salary to the contestant or contestee, it is said (page 443 of 154 Tenn., page 730 of 288 S. W.):

"We are of opinion that no compensation, other than that paid to the temporary judge, can be made to any one until the election contest is determined. The person finally declared to have been elected judge will be entitled to the full salary for the term to which he has been elected. The right to this salary follows the title to the office. · This is well settled in Tennessee. [*Mayor, etc., of City of*] *Memphis* v. *Woodward*, 59 Tenn. 499, 27 Am. Rep. 750;

*Currey* v. *Wright*, 77 Tenn. 247; *State ex rel.* v. *Grindstaff*, 144 Tenn. 554, 234 S. W. 510.

"It results, therefore, that Judge ENGLAND should be paid the compensation provided for circuit judges while he serves under this temporary appointment. No other payment should be made until the election contest is. settled, and payment should then be made to the successful party as from the beginning of the term to which he is found to have been elected. It is so declared."

We think the foregoing case is determinative of the question now before us and other cases cited by counsel and distinguished from the instant case need not be considered. The question before us involves both a public and a private interest. The duty devolving upon the County Judge must be performed by someone, otherwise the function of government would be seriously impaired. On the other hand, a citizen who is defeated of his right to hold the office should not be deprived of his right to hold it as well as its emoluments by the fraud and corruption of another. Moreover, we think it best subserves the public interest that the County should be held liable for the salary of one who has been thus defrauded of his office than to hold otherwise. It amounts to actual if not constructive notice to the citizenry of the county that a certificate of election issued upon false and fraudulent returns will result in financial loss to the County.

While we cast no aspersions upon the integrity of C. W. Wright, who was given a certificate of election as against Byrd, the rightful claimant, it cannot be doubted that his induction into office resulted from the gross malfeasance in office of election officers and County Election Commissioners whose duty it was to hold an honest election and thus safe-guard the public interest.

The assignments of error are overruled and the decree of the Chancellor is affirmed. The cause will be remanded to the Chancery Court of Scott County for the application and entry of such orders as may be necessary to enforce said decree.