**Francis P. DEVINE, Appellee,**

v.

**Raymond James WONDERLICH, Appellant.**

No. 62816.

Supreme Court of Iowa.

Feb. 20, 1980.

Timothy F. Gerard of Baumert & Gerard, Sigourney, for appellant.

James P. Reilly of Spayde & Reilly, Oskaloosa, for appellee.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McGIVERIN and LARSON, JJ.

REES, Justice.

Raymond James Wonderlich appeals from an adverse summary judgment granted plaintiff Francis P. Devine for $12,749.94, the amount which Wonderlich received as salary while serving on the Keokuk County board of supervisors pursuant to the decisions of an election contest court and the district court. Devine had been adjudicated the winner of the election for the position in question by this court approximately eighteen months after the defendant Wonderlich assumed the office. We reverse the judgment of the district court and remand this case for dismissal of plaintiff's action.

After a canvass of the votes cast in the November 1976 election for the position of county supervisor, plaintiff was declared the winner by two votes. Defendant Wonderlich, then incumbent in the office, filed an election contest and, pursuant to section 62.19, The Code 1975, the contest court declared Wonderlich the winner of the election, revoked the plaintiff's certificate of election and caused a certificate of election to be issued to the defendant. Wonderlich thereupon assumed office on January 1, 1977. Upon appeal by Devine, the district court affirmed the decision of the contest court. On further appeal to this court, we reversed the district court ruling and held that plaintiff had actually won the election. *Devine v. Wonderlich*, 268 N.W.2d 620, 630 (Iowa 1978). On July 21, 1978, the district court directed that a certificate of election be issued to Devine.

On August 29, 1978, Devine instituted the present action, seeking from the defendant the amount which Wonderlich had received in compensation for serving on the board of supervisors pursuant to the decisions of the contest court and the district court.

On September 12 Wonderlich filed a cross-petition, naming members of the contest court, the commissioner of elections, members of the county board of supervisors, the county auditor, and Keokuk County as third-party defendants. Wonderlich alleged that said third-party defendants were the parties actually liable to the plaintiff on the salary claim, and sought indemnification from the aforementioned parties. On September 21 the third-party defendants moved to dismiss the cross-petition on the ground that they had been acting in their official capacities and that the cross-petition failed to state a claim upon which relief could be granted. On November 3 the trial court dismissed the cross-petition, a ruling from which the defendant has not appealed. Thus the issue of potential alternative sources for a successful election contestant's salary is not before us at this time.

The plaintiff then moved for summary judgment on his petition. Following hearing and the submission of briefs, the trial court sustained plaintiff's motion for summary judgment on November 3, 1978. While expressing doubt regarding the equity of the result, the trial court found existing case law to be in plaintiff's favor and ruled accordingly. On December 1, 1978 Wonderlich filed a timely notice of appeal to this court.

The sole issue presented by this appeal is whether the eventual loser of an election contest may be found liable to the person to whom the office is ultimately awarded for the amount of salary which he or she received while serving in office pending resolution of the election contest.

We have in the past adhered to the majority position that a de jure officer, the rightful holder of an office, may recover from a de facto officer for the period which the de jure officer was deprived of his or her office. *Harding v. City of Des Moines*, 193 Iowa 885, 889, 188 N.W. 135, 137 (1922); *McCue v. County of Wapello*, 56 Iowa 698, 704–05, 10 N.W. 248, 251 (1881). Concomitantly we have held that a governing body cannot be liable to a de jure officer if the salary in question has been paid to a de facto officer. *Glenn v. Chambers*, 242 Iowa 760, 770–71, 48 N.W.2d 275, 280–81 (1951); *McClinton v. Nelson*, 232 Iowa 543, 547–48, 4 N.W.2d 247, 248–49 (1942); *Harding v. City of Des Moines*. The latter position is not without statutory exception. *See Hild v. Polk County*, 242 Iowa 1354, 1358–59, 49 N.W.2d 206, 207–08 (1951) (general rule abrogated by section 66.9, The Code, as to public officials suspended for misconduct and then restored to office).

Despite Devine's contention, we find no statutory provision applicable to the case at bar. Section 62.20 requires an incumbent who wishes to remain in office *and who challenges the decision of the contest court* to post a bond which may be forfeited upon an adverse decision upon appeal. As the incumbent Wonderlich was not challenging the decision of the contest court, section 62.20 provides no guidance. Resolution of

this dispute depends on this court's continued adherence to the majority position taken in *Harding* in the context of an election contest.

Before reaching the merits of this controversy, we wish to clarify the parameters of our decision. While the possibility of governmental liability to the de jure officeholder involves considerations interrelated with those relevant to resolution of this dispute, no issue of governmental liability is presented by this case. Some of the cases which we will discuss involve the question of governmental liability. This is a result of the underlying considerations which the issues of de facto official and governmental liability hold in common and not a reflection of the scope of this opinion. We are only determining the liability of Wonderlich, the de facto member of the board of supervisors during the election contest period, to Devine, the de jure member of the board of supervisors for the same period, for the salary received by Wonderlich. Our holding is therefore limited to the election contest context.

We also note, as earlier mentioned, that the legislature has provided a partial solution to salary disputes which may arise from election contests by enacting section 62.20, and that ultimate resolution of the issue before us, as well as consideration of possible governmental liability, would be an appropriate subject for legislative action.

In *Brown v. Tama County*, 122 Iowa 745, 754, 98 N.W. 562, 566 (1904), a case involving alleged governmental liability to a de jure officeholder following an election contest, we stated that any hardship which devolves upon the de facto officeholder can be traced to the fault of the de facto officeholder "who, without sufficient grounds, has disputed his right and taken emoluments which rightfully he [the de jure officeholder] should have received." We further noted that an election contest is basi-

cally private in nature, involving only the contestants as active parties. Id. It is largely this rationale, and the resulting apportionment of liability as applied to election contests, which we are asked to reconsider.

We find the factual situation presented by the election contest in this case to require a reversal of our earlier position as stated in *Harding* and the aforementioned cases. It is clear that the public good is best served when the office is occupied and the duties discharged. *Brown*, 104 Iowa at 754–55, 98 N.W. at 566. In the event of a close election where the outcome hinges upon the validity of a number of disputed votes, the candidate who initially takes office pursuant to the results of an election contest would necessarily be forced to assume the risk that he or she may be forced to surrender any salary received to his or her opponent in the election. He or she could thus in good faith discharge the duties of office in the public service and yet receive no compensation. Such a possibility, we believe, operates more as a deterrent to filling the office pending an election contest since the issue of potential personal liability to the eventual de jure officeholder remains open. *See Stuhr v. Curran*, 44 N.J.L. 181, 190 (1882). Removing the onus from the de facto officer would ensure maintenance of the public service and, as we will yet discuss, result in a more equitable distribution of risk.

In *Brown*, as noted above, we stated that any fault which may be found rests on the de facto officer as he or she chose to assume office or contest the election on insufficient grounds. We no longer find this reasoning persuasive. If any error is found in election contest litigation, it is usually attributable to the contest court or the district court whose decisions determine the occupant of the office.[1] As was stated in the leading case of *Stuhr v. Curran*, 44 N.J.L. at 189—

1. We in no way mean to imply that the members of the contest court or the district court, discharging their statutory duties in good faith, may be liable to the de jure officeholder. *See, e. g., Blanton v. Barrick*, 258 N.W.2d 306, 308–09 (Iowa 1977).

90, and acknowledged by those courts applying the minority position to election contests, e. g., *LaBelle v. Hazard,* 91 R.I. 42, 160 A.2d 723, 725 (1960); *State ex rel. Byrd v. Scott County,* 181 Tenn. 665, 671, 184 S.W.2d 20, 23 (1941); *State ex rel. Godby v. Hager,* 154 W.Va. 606, 609, 177 S.E.2d 556, 558 (1970), fault does not lie with· the de facto officer:

> It would, however, be far more just and accordant with legal principles that the public treasury should respond to the plaintiff here, than that the loss should fall upon the defendant, for it was through the mistake of the officers of the law, and not by the defendant's fault, that the plaintiff has been subjected to the deprivation of his office. If fraud was imputable to the defendant, the case would present a different aspect, but there is no pretence of bad faith on his part upon which to found a recovery. The unquestioned rule that mistake of the law excuses no one, and that the appropriation of another's property under the honest belief by the wrong-doer that it is his own, furnishes no defence, has not the slightest application here. The distinction is too obvious to escape even casual observation. In what respect did Curran [the de facto officer] mistake either law or fact? He took possession of the office upon the assumption that he was declared duly elected by the board legally constituted to decide that question. In this he was not in error, for the fact is conceded to be so. He acted, not upon the fact of his election, but simply upon the fact that he was declared to be elected.

2. We note again that our holding is limited by section 62.20. Incumbent officeholders who choose to remain in office while challenging an

As to the law he made no mistake, for it will not be denied that, as matters then stood, it was his imperative duty to accept the fact to be as found by the board and to occupy the place.

Wonderlich served in office only so long as he remained in possession of a valid certificate of election which the contest court caused to be issued, the action of which was sustained by the district court. He did so pursuant to the decisions of duly empowered governmental bodies whose decisions were later determined to be erroneous.

▮▮▮ Rather than continuing to adhere to the majority position in the election contest context and deny the de facto official compensation for services rendered under a then valid certificate of election, we conclude that both the public interest in having the office filled and its duties discharged and the aforementioned equitable considerations mandate reversal of our prior position. We hold that the de jure officeholder who ultimately prevails in an election may not recover from the de facto officeholder the salary he or she received while serving in office during the pendency of the contest litigation.[2] We are not at this time called upon to decide from whom Devine may have recourse for salary due, and do not intimate any view on this issue.

We therefore reverse the trial court's grant of summary judgment in favor of Devine, and remand this case for dismissal of plaintiff's petition.

REVERSED AND REMANDED WITH DIRECTIONS.

adverse judgment from the contest court are thus outside the scope of this ruling.