CAPP MANUFACTURING COMPANY, appellant, v. ARTHUR J. HARTMAN, appellee.

No. 52316.

(Reported in 148 N.W.2d 465)

FEBRUARY 7, 1967.

Abramson, Myers & Myers, of Des Moines, for appellant.

Dailey, Dailey, Ruther & Bauer, of Burlington, for appellee.

GARFIELD, C. J.—This is a law action, tried without a jury, by M. Capp Manufacturing Company, an Iowa corporation engaged in selling and constructing custom-built homes, for damages for breach of a written contract under which it was to plan, deliver and erect a home on the lot of defendant Hartman in the city of Burlington. Defendant refused to accept delivery of the home and plaintiff sued to recover its profit. Plaintiff has appealed from judgment for defendant.

Defendant's answer admits the making of the contract as alleged and that plaintiff prepared and furnished plans for the home. It appears without dispute defendant refused to accept delivery of the materials. His answer alleges the contract was executed under a mutual mistake of fact in that both parties believed it would be possible to construct the home on de-

fendant's lot without violating Zoning Ordinance 2143 of the city, whereas Articles XV and XVI thereof prohibit construction on defendant's lot of a home of the dimensions called for in the contract.

An amendment to answer filed a few days before trial alleges that because of the prohibition in the zoning ordinance performance of the contract by defendant would be in violation thereof and the contract is therefore illegal and void.

The trial court held the contract was entered into under the alleged mutual mistake, was illegal and void upon the ground pleaded and sustained both defenses.

We are unable to agree with the trial court. We think defendant not only failed to carry his burden to sustain either defense but that the evidence shows conclusively performance of the contract was not prohibited by the provisions of the zoning ordinance relied upon. In our view the appeal presents largely fact questions. While this opinion can be of little value as precedent, the litigants, counsel and the trial court are entitled to the reasons for the conclusion reached.

I. It is admitted the final contract was entered into on February 24, 1965. The contract and final plans for the house plainly give its dimensions as 26 feet wide, north and south, by 40 feet long, east and west, plus a breezeway of 10 feet leading to a garage 14 feet wide, both east and west. Thus the overall length of the house with breezeway and garage is 64 feet. The width of the house, i.e., its north and south dimension (26 feet) and the north and south dimension of the breezeway and garage (22 feet) are not material to the controversy. The defense is that the overall length of the improvement is such that the minimum depth of the rear yard required by the zoning ordinance (25 feet) could not be attained by placing the home on defendant's lot.

The lot is 40 feet wide, north and south, by 117 feet long, east and west. It abuts a north and south street on the west, an east and west street on the south, and a north and south alley on the east of the lot. According to the zoning ordinance defendant's front yard would be west of the house and the rear yard would be east of the garage.

An important provision (section 6) of Article XVI of the ordinance is that where a lot abuts an alley, half the alley width is considered part of the required rear yard. The alley here is at least 14 feet wide. Thus, for practical purposes here defendant's lot is 124 feet (117 plus 7) long east and west. So the rear yard requirement of 25 feet in depth would be met by placing the east wall of the garage only 18 feet west of the west edge of the alley. This all clearly appears without dispute.

Of course the front yard requirement of the ordinance must also be met. Article XV thereof (one of two articles defendant's answer alleges would be violated by placing the Capp home on his lot) consists merely of a table of height and area requirements. The minimum depth requirement of front yards in the district in question is given as 30 feet. It is obvious the front of this 64-foot-long improvement could be set back as far as 35 feet from the street on the west of the 117-foot lot and still leave 18 feet between the east wall of the garage and the west edge of the alley (25 feet to the center of the alley) at the rear.

Another provision of the ordinance should be considered. Section 4 of Article XVI provides that where 40 percent or more of the frontage on the same side of a street between two intersecting streets has buildings with front yard greater or less, by not more than 10 feet, than the depth otherwise required (30 feet here), new buildings shall not be erected closer to the street than the average front yard of existing buildings.

Defendant made no attempt to show this last provision has application to this controversy. If the average depth of front yards between the street at the south of defendant's lot and the next parallel street to the north required his home to be set back more than the ordinance otherwise requires, this certainly could easily have been shown in evidence.

What has been said is deemed determinative of the appeal but more may be added. On April 20, 1965, defendant had his lot surveyed, applied to the city building inspector for a permit to erect the Capp home on his lot and testified it was denied. The plans, clearly showing the dimensions of the home as we have stated them, were submitted with the application and the

size of the lot was also shown therein. The building inspector testified he refused the permit for the Capp home because it would not leave a rear yard of the required depth. In this he was obviously mistaken as we have tried to demonstrate.

However, on April 21 the inspector issued defendant a permit for a home the same size as the Capp home, without the breezeway and garage, under which defendant promptly constructed a home set back just 35 feet from the street on the west of his lot. This appears from defendant's own testimony and seems to be persuasive that the provision of section 4, Article XVI, of the ordinance, supra, did not require the Capp home set back more than 35 feet from the street on the west.

Incidentally, defendant also constructed a garage 22 feet square at the rear of the house he built, with an 8-foot space between the rear of the house and the garage and just 12 feet between the east wall of the garage and the west edge of the alley. Although the zoning ordinance requires a permit for the garage, defendant had not obtained one at the time of trial on December 14, 1965. Since the garage defendant built is located less than 10 feet from his house it is regarded as part of it in determining the depth of the rear yard (section 8(b), Article XVI, of the ordinance).

Also incidentally, before defendant applied for a permit to build the Capp home he informed plaintiff he found he could obtain the materials in Burlington at a lower price than the contract in question provides and indicated he proposed to do so. And that is what he did.

II. The building inspector testified construction of the Capp home on defendant's lot would violate the zoning ordinance. The answer was received subject to plaintiff's timely objection it was incompetent as a legal conclusion and opinion of the witness. The trial court's findings and conclusions indicate he considered the answer. We are satisfied plaintiff's objection should have been sustained.

The testimony was upon a question of law or mixed question of law and fact upon which even an expert witness is not permitted to express his opinion directly. Such matters are not the subject of opinion testimony. See In re Estate of

Myers, 238 Iowa 1103, 1112, 29 N.W.2d 426, 430; Briney v. Tri-State Mutual Grain Dealers Fire Ins. Co., 254 Iowa 673, 687, 117 N.W.2d 889, 897; In re Estate of Plumb, 256 Iowa 938, 946, 129 N.W.2d 630, 635. See also Grismore v. Consolidated Products Co., 232 Iowa 328, 361, 5 N.W.2d 646, 663; 32 C. J. S., Evidence (1964), section 453, page 92.

Moreover, the inspector's answer is contrary to undisputed facts and the terms of the ordinance relied upon and so should not be accepted.

III. The affirmative defenses are not based on the claim it would violate the ordinance to construct the Capp home on defendant's lot without a building permit and that the inspector refused to issue such permit. We have no occasion to consider whether such a claim could prevail under the evidence here. As previously indicated, the claim as pleaded and tried is that the ordinance prohibits construction on defendant's lot of a home of the dimensions of plaintiff's. The trial court so held contrary, as we believe, to admitted or undisputed facts. Other assigned errors need not be discussed.

IV. It appears without dispute that plaintiff's net profit, if defendant had taken delivery of the home contracted for, would have been $1747. Since defendant failed to establish his defense of mutual mistake or illegality in the respect alleged, plaintiff is entitled to judgment for this amount with interest from date of judgment, as prayed, and costs. For entry thereof the cause is—Reversed and remanded.

All JUSTICES concur except BECKER, J., who concurs in the result.