**Robert SCHLICHTE, Administrator of the Estate of Edward A. Schlichte, Deceased, Appellee,**

v.

**FRANKLIN TROY TRUCKS and John Robert Hamilton, Appellants.**

No. 60328.

Supreme Court of Iowa.

May 17, 1978.

Cambridge, Feilmeyer, Landsness, Rutherford & Chase, Atlantic, for appellants.

McCullough Law Firm, Sac City, and Crane, Peters & McMinimee, Carroll, for appellee.

Considered by MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP, and REYNOLDSON, JJ.

UHLENHOPP, Justice.

This appeal involves three claimed errors in a trial of a wrongful death action.

The evidence viewed in the most favorable light to the verdict reveals that after dark on October 31, 1975, on a primary highway, defendant Franklin Troy Trucks drove the lime truck of defendant John Robert Hamilton with the latter's consent, pulling a "pup trailer." The trailer had no safety chain attaching it to the truck. It became disengaged from the truck, rolled backward, and turned on its side partially off the traveled portion with its long heavy tongue projecting across part of the roadway at about head level.

Without leaving any warning, Trucks went from the scene for help. Two cars approached the scene. One of them stopped in time to avoid collision, but barely. The other was driven by plaintiff's decedent, Edward A. Schlichte, aged 19. He proceeded downhill toward the disabled trailer from such direction that the bottom of the trailer faced him. He evidently saw the trailer or its tongue, since he skidded his left wheels 130 feet and his right wheels 101 feet to the point of impact. But he could not stop in time, collided with the tongue, went into the adjoining field approximately 60 feet east of the roadway, and stopped 290 feet north of the point of impact. The collision sheered off the sup-

port posts of the top of the car and fractured decedent's skull. Decedent was taken to a hospital where he died the next day.

A probate court appointed plaintiff as administrator of decedent's estate, and plaintiff thereupon sued defendants Trucks and Hamilton for decedent's wrongful death. A jury returned a verdict for plaintiff in the sum of $100,000, and defendants appealed.

In their appeal defendants contend the trial court erred in (1) submitting to the jury a damage item for decedent's pain and suffering, (2) allowing a witness to answer a question about reflectors on the trailer, and (3) permitting a witness to opine about decedent's violation of law.

■■ I. *Pain and Suffering.* We permit recovery for a decedent's pain and suffering in wrongful death actions when the item has substantial evidentiary support. *Fitzgerald v. Hale,* 247 Iowa 1194, 78 N.W.2d 509. The question here is whether the item has evidentiary support which is substantial. This item is not to be submitted, of course, if death or unconsciousness is instantaneous. *Hurtig v. Bjork,* 258 Iowa 155, 160, 138 N.W.2d 62, 65 ("An unconscious person does not suffer pain."); 22 Am.Jur.2d Death § 26 at 625; 25A C.J.S. Death § 106 at 943. See also *Giarranto v. Weitz Co.,* 259 Iowa 1292, 147 N.W.2d 824. On the other hand, if substantial evidence shows the decedent did suffer pain the item is submissible although the period of consciousness was not protracted. *Hurtig v. Bjork,* supra.

■ This decedent sustained a very severe head injury although he did not expire until about noon of the next day. The issue is whether he was sufficiently conscious in extent and time that reasonable minds could differ as to whether he suffered pain. The evidence plaintiff introduced on this issue is brief and comes from the physician who attended decedent soon after the collision. The main part is this:

Q. When you observed this, what action did you take? A. Well, the patient was unconscious, and the first thing you do is to establish an airway, make sure they can breathe adequately, so we put in a plastic airway, and I can't remember now—

Q. Was it a plastic airway that was put into his throat? A. No; into his mouth; and I don't believe he was given oxygen. His breathing was adequate in the emergency room. We examined him all over. He could move all of his extremities but his left arm and left leg did not move as much as his right arm and right leg, and this is because the left side of the body is controlled by the right side of the brain, and so the injury was to the right side of the brain and so that the left side was not moving as well.

Q. When you talk about extremities you are talking about the arms and legs of Edward Schlichte? A. Yes. He had decerebrate posturing which means both his arms and legs were extended and stiff to some extent, but he did move them. He was unconscious but he wasn't totally unresponsive to pain because I would pinch his arm and he did move somewhat in response to the painful stimulus. I can't remember now if he groaned but he did respond to some extent to pain, but that was about it.

Q. Did you observe the eyes of Edward Schlichte at all? A. Yes; let's see; I have written here that his left pupil was dilated and fixed. That means it didn't respond to light. His right pupil was constricted, and it was also fixed, which means, you know, he had quite a severe head injury because of the unresponsiveness to light. He did not have dolly's eye movement. And usually when a person is not too far unconscious, when you turn his head the eyes will act like a doll's eye. Now, I can't remember—I better not say too much more about that, but anyway, this was observed by the neurosurgeon in Omaha that he did not have doll's eye movement, which means the injury was severe.

Is this testimony more than a scintilla that decedent consciously suffered pain to some extent and of some duration?

A similar issue arose on the claim of an excessive verdict in *Hurtig v. Bjork*, supra, 258 Iowa 155, 138 N.W.2d 62. This court appears to have thought damage was recoverable for pain and suffering, since it held $1000 could be allowed for that item. There the evidence showed:

Vicki was severely injured. She suffered a broken shoulder and upper arm, a punctured lung and a basal skull fracture. A salesman lifted her from the highway, carried her into the home and placed her on a bed. She was limp and "completely out." An osteopathic physician arrived in a few minutes and examined her 15 to 20 minutes. When he moved her arm Vicki indicated pain. He did not think she "was injured that severely."

Vicki was taken some 20 miles by ambulance at high speed to a Cherokee hospital. She arrived about 5:45, apparently unconscious, but regained consciousness in a few minutes. An unconscious person does not suffer pain. Part of the time Vicki was in the hospital she was semiconscious and felt pain although less than if she were conscious.

Vicki's father and stepmother were attending a trucker's convention in Sioux City when the accident occurred. They reached the hospital about 7:15 and saw Vicki briefly. She told her stepmother, "Mommy, my head hurts." This was the only coherent statement any witness heard from her. At times she cried out incoherently. 258 Iowa at 160, 138 N.W.2d at 65.

The court stated at page 162, 138 N.W.2d at 66:

It would seem clear that it would not be an abuse of discretion for the trial court to hold $1000 is the largest award the evidence warrants for pain and suffering during the three hours Vicki survived the accident. She was either unconscious, with no pain, or only semiconscious, with reduced pain, during much of this brief interval.

Here the physician testified that decedent was unconscious but did respond to some extent to painful stimulus, but whether this was reflex action or a conscious response the physician did not say and was not asked and the burden of proof was of course on plaintiff. Upon examination of the entire record on this subject we conclude that the evidence on consciousness and pain is not "substantial." We therefore hold that on this record, the trial court erred in submitting pain and suffering. *Dixon v. Serodino, Inc.*, 331 F.2d 668 (6 Cir.); *Baker v. Slack*, 319 Mich. 703, 30 N.W.2d 403; *Standard Oil Co. v. Crane*, 199 Miss. 69, 23 So.2d 297; *Whalen v. Daugherty*, 30 A.D.2d 604, 290 N.Y.S.2d 3; *Camp v. Petroleum Carrier Corp.*, 204 S.C. 133, 28 S.E.2d 683.

■ II. *Reflectors.* As decedent drove downhill toward the disabled trailer, its bottom faced him and its tongue protruded over part of the roadway.

During reception of the testimony of a state trooper who came to the collision scene, this occurred:

Q. (Plaintiff's Attorney) Did you examine both the truck and the pup trailer to determine if there were, on those two units, let's start with the pup trailer, did you examine the pup trailer to see if it had the required reflectors on it?

Mr. Feilmeyer (Defendants' Attorney): That is objected to as irrelevant and immaterial, Your Honor.

The Court: Overruled, you may answer.

A. Yes, I did.

Q. What did you find? A. I found it didn't have the required reflectors on the trailer box.

Defendants contend before us that this testimony was irrelevant, for the reflectors would not be on the bottom of the trailer facing decedent.

Plaintiff did not plead that defendants were negligent in failing to have reflectors on the trailer, nor did the trial court submit to the jury such a charge against defendants. But in specification (b) of their answer, defendants averred contributory negligence on decedent's part in failing to maintain a proper lookout. Plaintiff desired of course to defend against that

charge. He wanted to show the absence of reflectors which might have been seen from decedent's higher position, in trying to show decedent was not careless in the matter of lookout.

We have said that evidence is relevant when it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Schiltz v. Cullen-Schiltz & Associates, Inc.*, 228 N.W.2d 10, 16 (Iowa). In addition, "A determination as to the relevancy and materiality of evidence rests largely in the trial court's discretion." *Hagenson v. United Tel. Co.*, 209 N.W.2d 76, 80 (Iowa).

The jury might not attach much weight to the evidence in question because of the direction from which decedent approached the overturned trailer but, applying the Hagenson principle, we are unwilling to say the trial court abused its discretion here in letting in the evidence in view of the issue of decedent's lookout and the approach of decedent from a higher position.

III. *Opinion on Law Violation.* In specification (c) of their answer, defendants averred decedent was contributorily negligent in "Driving at a speed at which he could not stop in an assured clear distance ahead." See Code 1977, § 321.285. The trial court submitted this specification to the jury, stated the Iowa law in this respect, and defined "assured clear distance ahead."

In examining the state trooper as a witness, plaintiff's attorney got into the subject of violation of law by decedent. We set out previous questions and objections and then italicize the ones which are now involved:

Q. (Plaintiff's Attorney) Officer Keast, was there any evidence, whatsoever, at that scene to indicate violation of the speed law by the Schlichte car that would make you want to go look at the tires?

Mr. Feilmeyer: I object to that question, Your Honor, as calling for the opinion and conclusion of the witness; no

sufficient foundation laid from which he could express such an opinion.

The Court: Sustained.

Q. Did you have any reason to even think that the Schlichte car was speeding from what you could see of that scene there?

Mr. Feilmeyer: This is objected to as being irrelevant and immaterial; calling for the opinion and conclusion of the witness for which there has been no foundation laid from which the witness could express any opinion; no background with respect to the witness's knowledge of investigation of physical factors from which to determine speed.

The Court: Sustained.

Q. The skid marks, did they indicate any violation of the law by the Schlichte car?

Mr. Feilmeyer: That is objected to as calling for the opinion and conclusion of this witness; it is asking for a legal conclusion which is strictly within the finding of fact; and defendants further object for all the reasons previously stated.

The Court: Overruled, you may answer.

Witness: Would you ask the question again, please?

Q. *The skid marks indicate to you that there was any violation of the speed laws by the Schlichte car? A. No, they did not.*

We note first that defendants did not renew their objection when plaintiff's attorney, at the witness' request, asked the last question a second time (changing "of the law" to "of the speed laws"). But plaintiff does not raise the point that defense counsel did not renew the objection. Apparently at trial the parties assumed that the objection and ruling went along with the repeated question, as is commonly the case. We therefore give the point no further consideration. See *Jakeway v. Allen,* 226 Iowa 13, 23–24, 282 N.W. 374, 380.

The parties do argue several other points preliminarily, such as whether defense counsel could validly object on the ground

of "all the reasons previously stated." Subject to a subsequent comment, we find no necessity to consider those points. We think two other issues which the parties argue are determinative: Did defendants make an objection which was proper in form? If so, was the objection good?

A. Plaintiff's question was whether the skid marks indicated "any violation of the law" by the Schlichte car (rephrased in the repeated question as "any violation of the speed laws"). This question required the witness to state whether the skid marks indicated a violation of law, here, a speed law. Necessarily the witness had to draw a legal conclusion—whether a violation of the speed law appeared from the skid marks. One of the expressed objections was that the question called for "a legal conclusion which is strictly within the finding of fact . . . ." The objection, "Calls for opinion and conclusion," is of course insufficient. *Hedges v. Conder,* 166 N.W.2d 844 (Iowa). Likewise, that the same conclusion is to be rendered by the fact finder is not itself a good objection; a qualified witness may opine on the ultimate question. *Grismore v. Consolidated Products Co.,* 232 Iowa 328, 5 N.W.2d 646.

Defendants could have objected that the question asked for an opinion which "was not a proper subject of expert testimony . . . ." *State v. Johnson,* 224 N.W.2d 617, 622 (Iowa). But the objection here went farther and stated why the opinion was not a proper subject of expert testimony—it called for a "legal conclusion." The objection was thus sufficient in form to raise the issue whether the question did call for a legal conclusion. *Capp Mfg. Co. v. Hartman,* 260 Iowa 24, 28, 148 N.W.2d 465, 468 (overruled objection: "it was incompetent as a legal conclusion and opinion of the witness"—reversal).

B. A question is objectionable which calls for a witness' conclusion on domestic law. *State v. Galloway,* 167 N.W.2d 89 (Iowa); *Capp Mfg. Co. v. Hartman,* supra, 260 Iowa 24, 148 N.W.2d 465; *Briney v. Tri-State Mut. Grain Dealers Fire Ins. Co.,* 254 Iowa 673, 117 N.W.2d 889; *In re Estate of Ransom,* 244 Iowa 343, 57 N.W.2d 89; McCormick, Opinion Evidence, 19 Drake L.Rev. 245, 259 ("At the other extreme, opinions on matters of domestic law or involving the law of the case or on mixed questions of law or fact are also excluded. To avoid confusion, there can only be one law-giver in a trial. Only the trial judge is permitted to define the law for the jury, and the jury has a prerogative and responsibility to apply the law to the facts.").

This question necessarily called for a legal conclusion, defendants objected that the question called for a legal conclusion, the pleadings and instructions directly involved the speed law, and the trial court erred in overruling the objection.

Because of the errors found in the first and third divisions, defendants are entitled to another trial.

REVERSED.

All Justices concur except MASON and RAWLINGS, JJ., who concur in result.