R. J. BLESSUM, Appellee,

v.

HOWARD COUNTY BOARD OF SUPER-
VISORS, Howard County, Iowa; Melvin
D. Cannon, Individually; and Leo Caf-
frey, Individually, Appellants.

No. 63188.

Supreme Court of Iowa.

Aug. 27, 1980.

Gerald M. Stambaugh and Don W. Burington of Laird, Burington, Bovard, Heiny & McManigal, Mason City, for appellants.

James Burns and Donald H. Gloe of Miller, Pearson, Gloe & Burns, Decorah, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, ALLBEE, McGIVERIN and LARSON, JJ.

McGIVERIN, Justice.

The trial court entered judgment against defendants Howard County Board of Supervisors, and Melvin Cannon and Leo Caffrey, individually, in favor of plaintiff R. J. Blessum based on jury verdicts responding to counts of plaintiff's petition alleging breach of contract, defamation, and deprivation of civil rights. Defendants appeal. Plaintiff cross-appeals from the refusal of the court to enter judgment on a verdict for punitive damages in his behalf as to another count in his petition, which alleged a constitutional tort. We affirm as to both the appeal and cross-appeal.

As a background to this involved case, two of the Howard county supervisors, Cannon and Caffrey, questioned the action of Blessum, as county engineer, in causing a bulldozer to be repaired at county expense when it was no longer owned by the county. The bulldozer had been traded off, but there was some evidence it had been used by the county after the sale. The discharge of Blessum by the county and a remark made by Caffrey in regard to Blessum gave rise to this litigation and the several issues presented here.

R. J. Blessum, a registered professional engineer, was employed by the Howard County Board of Supervisors as county engineer from January 1, 1966, through April 5, 1976. His last written contract with the Board was for three years beginning on January 1, 1976, and ending on December 31, 1978, at a salary of $24,000 per year. The contract provided for termination on three months' notice for the purpose of renegotiation or for cause.

On January 19, 1976, Blessum received from the Board a notice of termination of employment. Blessum responded by letter on January 20 and demanded a hearing in accordance with the Soldiers Preference Act (chapter 70, The Code). Plaintiff never received a hearing in regard to his termination.

Four reasons for termination were set out in the notice. Of these four, only one was submitted to the jury as a specification of cause for termination and the jury found against defendants thereon. Defendants do not appeal from that finding made by the jury.

Plaintiff's petition was cast in five counts. Count I against the Board was based on an alleged breach of the written contract between Blessum and the Board. Count II, also against the Board, was based on the alleged noncompliance with the Soldiers Preference Act in failing to grant plaintiff a hearing before discharge. Count III was based on defamation by defendant Caffrey. Count IV against defendants Melvin Cannon and Leo Caffrey, individually, was based on an alleged denial of Blessum's constitutional rights, privileges, and immunities in violation of 42 U.S.C. § 1983. Count V against the Board was based on an alleged deprivation of property and rights without due process of law in violation of the fourteenth amendment of the United States Constitution and in violation of article I, section I, of the Constitution of Iowa.

On October 18, 1978, the jury returned a verdict under count I for $40,000 against the Board; under count II for $40,000 compensatory, and $5000 exemplary damages against the Board; under count III for $2500 compensatory and $2500 exemplary against defendant Caffrey; under count IV for $10,000 compensatory and $5000 exemplary against defendants Cannon and Caffrey; and under count V for $10,000 compensatory and $5000 exemplary against the Board.

On October 23, 1978, the court, in making rulings previously reserved, directed verdicts in favor of defendants as to counts II and V, awarded $8000 as attorney fees to Blessum's attorneys under count IV, and entered judgment on the rest of the jury verdict.

At trial the evidence showed that Blessum had authorized repairs to be made at county expense on a crawler tractor when the county was under no legal obligation to do so because Howard County had previously traded the tractor to a private party.

On March 18, 1976, at a meeting in the Howard County Courthouse, Caffrey made a statement, in substance, calling Blessum a "crook." At trial, Caffrey testified that he had knowledge at the time the statements were made of the tractor being repaired and characterized that knowledge as not knowing whether it was "crooked" but it was something that shouldn't have been done. However, Caffrey, in his pretrial deposition, and in answers to written interrogatories, admitted that on March 18, 1976, he had no knowledge of any facts which would lead him to believe Blessum had done something "crooked."

All actions against plaintiff in behalf of the Board were taken by supervisors Cannon and Caffrey. Supervisor George Wood did not join in the notice of termination or firing of Blessum.

After plaintiff's termination, the Board contracted with an engineering firm from Mason City for consulting engineering work starting on April 27, 1976. In September of 1977 Richard Brown was employed as permanent engineer. The Board paid $52,175 for engineering services performed from the date of plaintiff's termination until October 6, 1978, two days before trial.

Other facts will be stated later as necessary for a discussion of the issues presented for our review.

The following issues are presented for our consideration:

1. Plaintiff's motion to dismiss the appeal;

2. Refusal to apply the "no double pay" rule and deny plaintiff recovery for breach of his employment contract as a public officer;

3. Submitting the slander issue to the jury;

4. Sufficiency of the actual damage evidence to support plaintiff's verdict in the 42 U.S.C. § 1983 claim;

5. Refusal to set aside the 42 U.S.C. § 1983 punitive damage award;

6. The amount of plaintiff's attorney fees awarded in connection with the 42 U.S.C. § 1983 trial court judgment;

7. Plaintiff's application for attorney fees on appeal under 42 U.S.C. § 1988;

8. Errors in jury instructions;

9. Refusal to allow section 309.17, The Code, into evidence for jury consideration;

10. The setting aside of a punitive damage award as duplicative of an allowed award.

I. *Jurisdiction of the appeal.* Blessum filed a motion to dismiss this appeal, stating that defendants failed to comply with Iowa R.Civ.P. 247 and, therefore, have not tolled the thirty–day period for filing on appeal under Iowa R.App.P. 5. The motion was ordered submitted with the appeal.

On October 19, the day after the verdict, defendants orally requested a sixty–day extension of time to file post–trial motions citing the complexity of the case and the press of other work.

On October 30, 1978, twelve days after the verdict, the court entered an order extending the time for the parties to file

post–trial motions until December 22, 1978 (sixty–five days after the verdict). No determination of good cause was made on the record.

On November 17, 1978, thirty days after the verdict, defendants filed motions for judgment n. o. v., new trial, and to reduce the award of fees to plaintiff's attorneys.

On December 7, 1978, fifty–one days after the verdict, plaintiff filed a motion for judgment n. o. v. or to reinstate verdict, which raised the issue set forth in the cross–appeal.

On February 17, 1979, the court denied all post–trial motions. Defendants' notice of appeal was filed on February 28, 1979, and plaintiff's notice of cross–appeal was filed March 5, 1979.

On September 24, 1979, we received from the clerk of the district court an order correcting record to conform to the truth filed by the district court on September 19. Therein, the court found that good cause was shown by defendants in their motion for an extension of time to file post–trial motions and that the order extending such time was based upon such a showing having been properly and adequately made. The court went on to find that it had no intention of attempting to give the parties a greater length of time to file post–trial motions than permitted by law.

Iowa R.Civ.P. 247 provides:

Motions under rules 243 [judgment n. o. v.] and 244 [new trial] and bills of exception under rule 241 must be filed within ten days after the verdict, report or decision is filed, or the jury is discharged, as the case may be, unless the court, for good cause shown and not ex parte, grants an additional time not to exceed thirty days.

In the recent case of *Rudolph v. Iowa Methodist Medical Center*, 293 N.W.2d 550, 554 (Iowa 1980), we stated the rule applicable to this case as follows:

The validity of the order extending the time for filing post–trial motions is crucial because if it was invalid the notice of appeal was untimely, having been filed more than thirty days after judgment although within thirty days of the ruling on the post–trial motions. *See* Iowa R.App.P. 5; *Hogan v. Chesterman*, 279 N.W.2d 12 (Iowa 1979). If the notice of appeal was too late, we lack subject matter jurisdiction of the appeal.

"[T]he maximum period of time which a trial court may allow for post–trial motions is 40 days; the initial 10–day period provided for by the rule, plus an additional period of up to 30 days upon the required showing of good cause." *Schmitt v. Clayton County*, 284 N.W.2d 186, 187 (Iowa 1979).

■ The district court under Iowa R.App.P. 10(d) is authorized to make the record conform to the truth, and we accept the court's finding of good cause for the extension of time to file post–trial motions. We need not determine the propriety of that portion of the trial court's order which stated it did not intend to extend the time to file post–trial motions beyond that permitted by rule 247, but find that the order extending time was valid for the maximum of forty days. Iowa R.Civ.P. 247. In that connection, we approve the following from 49 C.J.S. *Judgments* § 450, at pp. 881–82 (1947).

As to jurisdiction of the subject matter, it seems that, although the judgment may go beyond the issues and grant relief not asked for, or not within the competence of the court, yet it may be good for as much as the court had power and authority to include in it. It has been held that a judgment in excess of the relief authorized is void only as to the excess.

(Footnotes omitted.) We also approve the following from 21 C.J.S. *Courts* § 32, at p. 42 (1940):

Proceedings of a court may be valid in part and void as to the residue, as where its action in some part is within its jurisdictional powers, while in other parts its action is without jurisdiction.

(Footnote omitted).

■ Because the order extending time to file post–trial motions was valid for the maximum of 40 days under rule 247, de-

fendant's post–trial motions filed thirty days after verdict were timely and notice of appeal therefrom was timely, giving us jurisdiction of this appeal. Plaintiff's motion to dismiss the appeal is overruled.

Because defendants' appeal was timely, plaintiff may cross–appeal in accordance with Iowa R.App.P. 5(a). Plaintiff properly filed his notice of cross–appeal within five days after the appeal. The cross–appeal also was taken from the trial court's final judgment on count V, as well as from the denial of his post–trial motions. Because the cross–appeal was properly taken from the final judgment on count V, we find that we also have jurisdiction to entertain plaintiff's cross–appeal. Iowa R.App.P. 5(a).

II. *Applicability of the "no double pay" rule.* The court entered judgment on the verdict under count I for plaintiff against the Board for $40,000 for breach of the written contract of employment.

The court relied on the general rule as to breach of employment contracts and damages therefor set forth in *Kitchen v. Stockman National Life Insurance Company,* 192 N.W.2d 796, 802 (Iowa 1971), as follows:

> [A]bsent good cause termination of [one's] employment within the [period provided by the contract constitutes] a breach of contract. For this [a party is] entitled to judgment for all wages past due and future promised earnings, less what was or could be reasonably earned by him in similar employment for the remainder of the [period of the contract]
> . . . ..

Defendant Board contends the court erred in overruling its motion for directed verdict. The Board says the "no double pay" rule, expressed in *Glenn v. Chambers,* 242 Iowa 760, 771, 48 N.W.2d 275, 281 (1951), and *Brown v. Tama County,* 122 Iowa 745, 98 N.W. 562 (1904), controls and requires that plaintiff be paid nothing although the Board breached its contract with him. The Board reasons that although the jury found Blessum, a de jure county officer, sustained $40,000 damages due to the Board's breach of contract, the evidence showed the Board paid a total of $52,175 to an independent contractor engineering firm and another engineer, de facto county officers, that performed duties as Howard county engineer during most of the balance of plaintiff's normal contract; therefore, under the "no double pay" rule, Howard County should not have to pay twice for the same office and Blessum is entitled to no damages for breach of his contract.

In the early Iowa case of *Brown v. Tama County,* 122 Iowa 745, 98 N.W. 562 (1904), a county superintendent of schools was kept from taking office by an election challenge. He was finally adjudicated entitled to office one and one–half years after the date he was to have taken office. The issue we faced in *Brown* was as follows: "Where, during the incumbency of a county officer *de facto* under color of title, the county pays him a salary provided by law, can the officer *de jure,* after obtaining possession of the office under final judgment of ouster, maintain an action against the county for payment to himself of the salary for the same period?" *Id.* at 749, 98 N.W. at 564. We held therein, that where an officer *de facto* is in possession under a prima facie good title and has been paid, the county will not be liable to pay the *de jure* officer the same salary after he had acquired or regained possession. *Id.* at 751–52, 98 N.W. at 565-66. However, in *Brown,* we also noted a line of cases outside of this jurisdiction, which would allow recovery by the ousted officer. We noted, for example, *Andrews v. Portland,* 79 Me. 484 (1889), in which the plaintiff had been "duly appointed and qualified city marshal, and had long been in the actual possession of the office, when he was wrongfully excluded therefrom by the action of the city officers, after which he not only remained ready to perform, but offered to perform, the duties to which he had been appointed; and it was held that he was entitled to recover his salary for the full term, although the marshal *de facto* had also been paid." *Brown,* 122 Iowa at 750, 98 N.W. at 564. We distinguished *Brown* from this line of cases because of the *de facto* officer's possession of office under a prima facie good title.

Several other Iowa cases have considered some aspect of the "no double pay" rule for public officials and employees. *Dickey v. King*, 220 Iowa 1322, 263 N.W. 823 (1935) (wrongfully discharged employee allowed pay although a replacement hired and paid); *Harding v. City of Des Moines*, 193 Iowa 885, 188 N.W. 135 (1922) (wrongfully discharged policemen denied back pay because de facto replacements had been paid, distinguishing *Jackson v. Independent School District*, 110 Iowa 313, 81 N.W. 596 (1900), as an action by wrongfully discharged teacher on a contract to collect a salary due thereon); *McClinton v. Melson*, 232 Iowa 543, 4 N.W.2d 247 (1942) (wrongfully discharged highway commission employee denied back pay, and the case also overruled *Dickey v. King*).

In *Glenn v. Chambers*, 244 Iowa 750, 56 N.W.2d 892 (1953) (companion case *Glenn v. Chambers*, 242 Iowa 760, 48 N.W.2d 275 (1951)), we stated the rule that payment in good faith to a de facto officer during his incumbency is a bar to recovery from a city by the rightful officer of salary for the same period where the de facto incumbent was definitely appointed to the position in place of the rightful holder and was not merely one of several employed to do the same kind of work.

In *Devine v. Wonderlich*, 288 N.W.2d 902 (Iowa 1980), we denied a claim by a de jure elected county supervisor to collect salary for the time he was out of office from a de facto supervisor. We further stated: "We are not at this time called upon to decide from whom Devine [de jure officer] may have recourse for salary due, and do not intimate any view on this issue." *Id.* at 905.

■ Blessum asserts that the hiring of another to fill his position is no defense to an action for damages on a written employment contract. We agree, in part based on the language in the *Brown* decision, and for another later stated reason. Here the successors to Blessum during the term of his contract were placed in the county engineer's position only due to the wrongful act of the Board in terminating plaintiff's writ-

ten employment contract. The successor engineers did not have the "color of title" to the office contemplated by *Brown*, where a district court held the de facto officer had won the election and he held the office one and one-half years by virtue of that adjudication. However, that ruling was reversed on appeal. In *Brown* the trial court order gave the de facto officer the office, thereby providing proper color of title. In the present case, there was no action pursuant to court order or in any other manner indicating the de facto county engineers took office under color of title as that phrase is used in *Brown*.

To the extent any of our prior cases purport to apply the "no double pay" rule without employing the color of title standard emphasized in *Brown* and as interpreted above, they are no longer controlling.

■ We also agree with Blessum that the "no double pay" rule has no applicability to a written contract of public employment. The numerous situations in which actions have been allowed under relevant statutes and case law against governmental bodies by civil servants, educators, administrators and other public employees and officials for breach of contract and wrongful termination of employment constitute adequate precedent requiring public bodies to pay twice for the same position in order to honor the written contract employment rights of an individual.

We hold the court correctly overruled the Board's motion to direct as to count I.

III. *Submissibility of the slander count.* Defendant Caffrey asserts the court erred in overruling his motion for directed verdict as to count III and in submitting to the jury plaintiff's claim for slander against him. Caffrey says the evidence was insufficient to allow submission. The jury returned a verdict for both compensatory and exemplary damages against Caffrey.

At an official meeting of the Howard County Board of Supervisors on March 18, 1976, residents of Riceville and vicinity met with the Board to determine whether the pending discharge of Blessum would have

any bearing upon the likelihood a certain road would be hard surfaced. Supervisors Cannon and Caffrey were the only supervisors at this meeting of twelve persons. Someone asked why Blessum was to be discharged. There was testimony to the effect that in referring to Blessum, Caffrey said, "We don't hire crooks," or "We don't want to work with a crook," or "We don't want that crook for a county engineer." Caffrey testified at trial that he said, "We wanted no part of anything crooked going on around here."

The parties concede and the court instructed that at the time of the statement, both Caffrey and Blessum were public officials, and therefore Caffrey's statement was qualifiedly privileged and the injured party must prove actual malice. *McCarney v. Des Moines Register & Tribune Co.*, 239 N.W.2d 152, 156 (Iowa 1976). We proceed accordingly.

Plaintiff says that the court erred in not holding the defendant's statement was slanderous per se, which would relieve him from proving special damages; and, accordingly, any alleged shortcomings of evidence claimed by defendant were harmless. Plaintiff also says that he proved Caffrey's statement was made with actual malice.

The trial court did not instruct the jury that defendant's statement was slanderous per se.[1] The court, however, did follow *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and instructed the jury that plaintiff must prove by clear and convincing evidence as an essential element of his claim that defendant made the statement with "actual malice." The court defined actual malice in the following way: "A statement is made with actual malice, as that term is used in this charge, if it is made with knowledge that it is false or with reckless disregard of whether it is false or not."

In *New York Times v. Sullivan*, the Supreme Court said:

The constitutional guaranties require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"–that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

*Id.* at 279, 84 S.Ct. at 726, 11 L.Ed.2d at 706.

We noted in *McCarney v. Des Moines Register & Tribune Company*, 239 N.W.2d at 155–56, that the *New York Times* case made the above rule applicable to the states and we followed that rule in a libel action for damages. We again follow the *New York Times* rule in the case at bar.[2]

Actual antagonism or contempt has been held insufficient to show malice. So has intent to inflict harm. There must be an intent to inflict harm *through falsehood.*

*McCarney*, 239 N.W.2d at 156 (citations omitted).

Clear and convincing proof of knowledge of falsity or reckless disregard for the truth must be shown. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 93 S.Ct. 2997, 3008, 41 L.Ed.2d 789, 800 (1974).

Plaintiff's position is that at the time the statements were made, Caffrey knew the statement was false or acted in reckless disregard for its truth. To satisfy the test, plaintiff produced defendant's own testimony from his deposition taken on June 1, 1977, in which he admitted that on the date of the March 18, 1976, meeting he did not have knowledge of any facts which would lead him to believe that Blessum was a crook, nor did he have knowledge of any information which would lead him to believe that Blessum had done anything crooked. Plaintiff says this evidence was sufficient to submit the actual malice charge of slander to the jury. We agree.

1. For a discussion of the differences between defamation per se and defamation per quod, and whether an oral charge of being a "crook" is one or the other, see 50 Am.Jur.2d *Libel and Slander* § 2, at 513 (1970) and the annotation on slander at 53 A.L.R.2d 8 (1957).

2. For a discussion as to the scope of the *New York Times v. Sullivan* case, see *annot.*, 95 A.L.R.2d 1450 (1964).

The testimony at trial was conflicting as to defendant's knowledge his statement was false. He attempted to rehabilitate himself and enumerate reasons why he might have thought the statement was true. On appeal he admits the statement was false.

We believe defendant's admissions, which were placed in evidence, were sufficient to warrant submission of the slander action to the jury under the *New York Times* rule and support the jury's verdict.

■ Defendant also complains that the words were actionable per quod and therefore Blessum was required to show special damages, which he failed to do, stating that mere presumption of harm does not permit recovery. However, plaintiff alleged, and during the course of the trial proved, the defendant had spoken falsely to the twelve named persons by accusing the plaintiff of being a "crook" and that the named persons were residents of the city of Riceville. That city and its residents were clients of plaintiff's private engineering firm. The jury could thereby find plaintiff was defamed, damaged in his name and reputation, and was caused mental suffering. Therefore, the plaintiff produced sufficient competent evidence to show his damage as a result of the false statement made by Caffrey. It is therefore unnecessary to determine whether the word "crook" is actionable per se or per quod.

No error appears in this assignment.

IV. *Damages under the 42 U.S.C. § 1983 action.* The court entered judgment on the verdict under count IV against Cannon and Caffrey for $10,000 compensatory and $5000 exemplary damages. Those defendants admit on appeal they wrongfully denied plaintiff a hearing before his discharge in violation of 42 U.S.C. § 1983.[3] The sole question raised now is one of adequacy of proof of damages by plaintiff. Defendants claim error by the court in overruling their motion for new trial challenging this point.

■ A. Defendants first argue that only nominal damages should be allowed plaintiff because there was no evidence of actual damage to him resulting from defendants' failure to grant him a hearing before discharge. Plaintiff responds that actual and substantial damages are recoverable under his showing of suffering, mental anguish, and emotional distress caused by the denial of a hearing.

Because this is a case of first impression for us involving damages under 42 U.S.C. § 1983, we examine relevant case authority.

Defendants cite *Carey v. Piphus*, 435 U.S. 247, 260–67, 98 S.Ct. 1042, 1050–54, 55 L.Ed.2d 252, 262–67 (1978), for the proposition that where there is no testimony in connection with any damages sustained by the person denied a hearing under 42 U.S.C. § 1983, that person's damages are limited to not to exceed one dollar.

In *Carey* the United States Supreme Court considered the elements and prerequisites for recovery of damages by students who were suspended from public elementary and secondary schools without procedural due process. The court held "that in the absence of proof of actual injury, the students [were] entitled to recover only nominal damages." *Id.* at 248, 98 S.Ct. at 1044, 55 L.Ed.2d at 255.

The Supreme Court said in *Carey*:

Our legal system's concept of damages reflects this view of legal rights. "The cardinal principle of damages in Anglo–American law is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty." 2 F. Harper & F. James, Law of Torts § 25.1, p. 1299 (1956) (emphasis in original). The Court implicitly has recognized the applicability of this principle to actions under § 1983 by stating that damages are available under

---

**3.** 42 U.S.C. § 1983, in effect when this cause of action accrued, provides: .

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. .

that section for actions "found . . . to have been violative of . . . constitutional rights *and to have caused compensable injury* . . . ."

*Id.* at 254–55, 98 S.Ct. at 1047–48, 55 L.Ed.2d at 259 (citations and footnotes omitted).

The Court stated further:

It is less difficult to conclude that damages awards under § 1983 should be governed by the principle of compensation than it is to apply this principle to concrete cases. But over the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights. These rules, defining the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under § 1983 as well.

*Id.* at 257–58, 98 S.Ct. at 1049, 55 L.Ed.2d at 261 (footnotes omitted).

Finally, we foresee no particular difficulty in producing evidence that mental and emotional distress actually was caused by the denial of procedural due process itself. Distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff. In sum, then, although mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused.

*Id.* at 263–64, 98 S.Ct. at 1052, 55 L.Ed.2d at 265.

In *Seaton v. Sky Realty Company, Inc.*, 491 F.2d 634, 636–37 (7th Cir. 1974), the court said:

[A]n award of compensatory damages under § 1982 or "actual damages" under § 3612 is appropriate for humiliation caused by the type of violations of rights established here. Humiliation can be inferred from the circumstances as well as established by the testimony. . . .

Compensatory damages are an appropriate remedy for deprivation of a federal right, are governed by federal standards, and "both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes. . . ."

We said in *Northrup v. Miles Homes, Inc. of Iowa*, 204 N.W.2d 850, 860 (Iowa 1973):

The basic claim . . . for mental and emotional harm is a well recognized separate cause of action in this jurisdiction.

.  .  .  .  .

It is not the court's function to weigh or test the credibility of testimony. We need only determine there was substantial evidence to support the verdict.

We believe there was substantial support for the verdict awarding actual damages under plaintiff's claim of defendants' denial of a hearing. The record shows that plaintiff strenuously attempted to get a hearing to exonerate himself. He had difficulties sleeping. The period following his notice of termination during which he was attempting to get a hearing was the biggest thing in his family life. He considered moving from Cresco and knew that the subject was known to his friends and social acquaintances. He also testified directly that, because he did not get a hearing before the Board, it affected his engineering work. Two and one–half years later, at the time of the trial, he still had no hearing. Circumstances involved in Blessum's firing were also the subject of numerous newspaper articles and editorials. Blessum's testimony was substantiated by that of his wife. Placing a dollar amount on mental pain and anguish is peculiarly a function of the jury. *Northrup*, 204 N.W.2d at 860.

We find no error here.

B. Defendants next contend that punitive damages allowed by the jury under plaintiff's § 1983 action should not be permitted because actual and substantial compensatory damages were not shown. Be-

cause we have denied defendants' claim that plaintiff was only entitled to nominal damages, we find no merit in this contention.

■ Defendant also says that the punitive damages must generally be proportionate to the actual damages.

In *Northrup* we said:

Exemplary damages are in no way intended to be compensatory. There is no set mathematical ratio between actual and exemplary damages. . . . Exemplary damages are intended to punish the defendant and others from similar wrongdoing. . . . To be effective in this purpose the exemplary damages awarded must be relatively large.

204 N.W.2d at 861 (citations omitted).

In following *Northrup*, we find that in light of the jury's award of $10,000 compensatory damages, the award of $5000 punitive damages was not excessive and the trial court did not err in refusing to set aside the award of exemplary damages.

V. *Attorney fees under the 42 U.S.C. § 1983 action.* 42 U.S.C., § 1988, as amended in 1976, provides:

In any action or proceeding to enforce the [provisions of section] . . . 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

■ A. Plaintiff's attorneys filed in the trial court an application for attorney fees under the above statute. The application was accompanied by a detailed statement of the time spent by two experienced attorneys in thoroughly investigating and preparing the entire case for trial and the trial itself. They listed 338 hours out-of-court and twelve days jury trial time. The application of plaintiff's counsel estimated they spent approximately one-third of their time in connection with the § 1983 claim.

The court sustained the application and entered judgment for plaintiff against defendants for $8000 in attorney fees under 42 U.S.C. § 1988 taxable as costs.

Defendants do not question the hourly and daily rates of compensation claimed. However, defendants, while they concede Blessum was not afforded a hearing under 42 U.S.C. § 1983, argue the court abused its discretion in attributing one-third of the time of plaintiff's counsel to count IV of the petition.

However, we agree with plaintiff that the record shows defendants vigorously resisted all aspects of plaintiff's § 1983 claim from the beginning of the employment of plaintiff's counsel to secure a hearing for him through the necessary conferences, investigation, research, briefing, court hearings, and trial time directly and indirectly related to the enforcement of plaintiff's rights under § 1983.

Trial court was in a position to make a valid allocation of the time spent by counsel on various aspects of the case.

We hold the court did not abuse its discretion in making the award of attorney fees to plaintiff under 42 U.S.C. § 1988.[4]

■ B. Upon submission of the appeal, plaintiff filed in this court an application for attorney fees under 42 U.S.C. § 1988 for services rendered in connection with handling the appeal directly related to the enforcement of plaintiff's 42 U.S.C. § 1983 claim. The application is accompanied by a detailed statement of the time and services performed by counsel. We sustain the application and hereby order that the sum of $1200 be taxed as costs of this appeal against defendants Cannon and Caffrey in favor of plaintiff as a fee for services of plaintiff's counsel in enforcement of plaintiff's rights in this appeal under 42 U.S.C. § 1983.

---

4. Recent cases awarding attorney fees under 42 U.S.C. § 1988 include *Maher v. Gagne*, — U.S. —, 100 S.Ct. 2570, 65 L.Ed.2d — (1980) (attorney fees assessed against state officials following a consent decree in federal action) and *Maine v. Thiboutot*, — U.S. —, 100 S.Ct. 2502, 65 L.Ed.2d — (1980) (attorney fees awarded in state action based on violations of federal statutory law).

VI. *Instruction 39.* Defendants contend the court erred in giving instruction 39 to the jury. This instruction in substance stated if the jury found plaintiff was "entitled to a verdict for being deprived of a hearing prior to the termination of his employment, and . . . that he was not discharged for cause," then the jury could award plaintiff certain damages, including loss of compensation and mental anguish. The instruction did not explicitly state it applied to any particular count of the petition. However, the instruction followed instructions 37 and 38, which clearly referred to count V of plaintiff's petition against the Board. In reading the instructions as a whole, it is clear that instruction 39 was directed only to count V of plaintiff's petition.

Defendants argue here that instruction 39 could have allowed duplicative recovery of damages by plaintiff for breach of contract and deprivation of hearing.

Without unduly extending this opinion, we doubt that defendants preserved error as to their contentions urged here. But in any event, any error that arguably could have led to duplicative damage was rendered harmless when the court, after trial, directed verdicts in favor of defendants as to count V (constitutional tort). *See Nassif v. Pipkin,* 178 N.W.2d 334, 337 (Iowa 1970).

No reversible error exists here.

VII. *Offer of section 309.17, The Code, into evidence to prove good faith.* Defendants next claim it was error for the court to refuse to allow in evidence for jury consideration an exhibit, which was a copy of the provisions of section 309.17, The Code,[5] because such evidence would show good faith and lack of malice on the part of defendants Cannon and Caffrey. Those defendants testified they relied on that statute and the advice of an attorney in their firing of Blessum without a hearing. Plaintiff's objection to the admission of the exhibit was sustained. Plaintiff asserts, as he did at trial, that allowing a written code section into evidence and into the jury room would allow impermissible speculation as to the law of the case when other evidence showed plaintiff was entitled to a hearing before discharge; also, the exhibit would emphasize a code section which was not the law upon which the court instructed the jury.

We conclude the court was correct in excluding the exhibit. The following from 75 Am.Jur.2d *Trials* § 1039, at 871–72 (1974), is pertinent:

> Jurors have no right to undertake an independent investigation of the law in the jury room, and they cannot be permitted to take to the jury room the statutes or a code for the purpose of ascertaining the law. Such practice would be inconsistent with the theory of correct trials by jury.

Also, we have refused to allow a witness to testify to a legal conclusion on domestic law. *Schlichte v. Franklin Troy Trucks,* 265 N.W.2d 725, 730 (Iowa 1978); *Capp Manufacturing Co. v. Hartman,* 260 Iowa 24, 28–29, 148 N.W.2d 465, 468 (1967); "To avoid confusion, there can be only one law—giver in a trial." McCormick, *Opinion Evidence,* 19 Drake L.Rev. 245, 259 (1970).

If only the court is to instruct the jury as to the applicable law, it would seem inconsistent with our theory of trials for a party to be able to place in evidence for jury consideration a copy of a statute on which he says he relied.

No error exists here.

VIII. *Advice of attorney.* Defendants' claim the trial court erred in failing to give their requested instruction No. 2, which stated in substance that if the jury found that attorney Mark Buchheit advised Cannon and Caffrey that they, as members of the Board of Supervisors, could discharge Blessum without a hearing, and if they

---

5. Section 309.17 provides:

The board of supervisors shall employ one or more registered civil engineers who shall be known as county engineers. The board shall fix their term of employment which shall not exceed three years, but the tenure of office may be terminated at any time by the board.

relied upon that advice and did not know to the contrary, then the jury must find for defendants. Defendants argue that there was strong evidence that the attorney gave such advice and that it was relied upon and acted upon by them; if the jury so found, good faith and lack of malice would necessarily follow, thereby exonerating them from any liability to plaintiff's civil rights complaint under 42 U.S.C. § 1983 and breach of contract claim.

Defendants' requested instruction No. 2 stated:

There is evidence in this case that defendants employed Mark Buchheit to appear and defend in this action. There is further evidence that he advised these defendants that no hearing was required under the laws for the discharge of the plaintiff and that they could discharge him if they saw fit summarily.

If you find by a preponderance of the evidence that attorney Mark Buchheit did so advise these defendants, that they believed that advice to be the law and that they did not know to the contrary and further that they relied upon his advice as being a proper interpretation of the law and acted thereon in discharging the plaintiff without a hearing, then you will find that the defendants are exonerated from any liability to the plaintiff growing out of any claimed breach of the contract or wrongful discharge.

Defendants also made the following record in that regard:

Defendants separately and collectively except to the failure of the Court to give requested instructions number two for the reason that it is a correct statement of the law, or if it isn't a correct statement of the law, it calls to the Court's attention a principle of law that is applicable and is necessary under the evidence in this case and at nowhere in the instructions is a similar instruction given.

By the terms of defendants' requested instruction, it appears that it was to be applied to counts I (breach of contract), II (section 70.6, The Code), IV (42 U.S.C. § 1983), and V (fourteenth amendment).

Because the trial court directed a verdict as to counts II and V for defendants, we are only concerned with counts I and IV.

There is testimony in the record from Cannon that the April 5, 1976, resolution terminating Blessum was signed on advice of counsel. However, counsel, Mark Buchheit, testified that he was first contacted to represent defendants around the first week of March 1976. He stated he had nothing to do with drafting the January 19, 1976, notice of termination, but he did draft the resolution of April 5, which terminated Blessum, at the direction of Caffrey and Cannon. Buchheit further stated that he advised Cannon or Caffrey prior to April 5, 1976, that the facts they had disclosed to him did not furnish cause for termination of Blessum's contract, and that at no time prior to the granting of the resolution did he advise the Board they did not have to grant Blessum a hearing.

■ Because we find that defendants' exception to the trial court's failure to give this requested instruction was insufficient to assert any legally valid grounds of error for our review, we affirm the trial court's refusal to give defendants' requested instruction.

Iowa R.Civ.P. 196 provides in relevant part that "all objections to . . . failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, *specifying the matter objected to and on what grounds.*" (Emphasis supplied.)

Generally, "[e]ven a defective requested instruction is sufficient to preserve error if it alerted the trial court to the claimed error." *Franken v. City of Sioux Center,* 272 N.W.2d 422, 426 (Iowa 1978); *Froman v. Perrin,* 213 N.W.2d 684, 689–90 (Iowa 1973).

At most, through the requested instruction itself and defendants' exception to the trial court's failure to so instruct, defendants preserved for our review the following issues: (1) whether the requested instruction was a correct statement of the law, entitling defendant to have the instruction

given by the trial court; and (2) if the instruction was not a correct statement of the law, whether it was sufficient to alert the trial court to the law that should be instructed upon. *See* Iowa R.Civ.P. 196.

Neither at trial, nor on appeal, do defendants assert any basis for the proposition that reliance on advice of counsel will exonerate them from liability for their breach of the contract with plaintiff. Our independent research was also unable to produce such a theory. Therefore, the trial court did not err in refusing to give the requested instruction to the extent it attempted to set forth the rule that reliance on advice of an attorney would exonerate defendants from liability for breach of contract.

■ As to that portion of the requested instruction that relates to plaintiff's 42 U.S.C. § 1983 claim, defendants, on appeal, rely on *Ashland v. Lapiner Motor Co.*, 247 Iowa 597, 601, 75 N.W.2d 357, 360 (1956) (good faith reliance upon advice of counsel is a defense to a malicious prosecution case), 67 C.J.S. *Officers* § 208(b) at 681 (1978), and several cases from other jurisdictions, in asserting that reliance on advice of counsel exonerated them from liability.

We do not believe that defendants' requested instruction is a proper statement of the law in the context of plaintiff's 42 U.S.C. § 1983 action. Defendants do not cite, nor are we able to find, any authority that would support the requested instruction as a proper statement of the law to be applied in this case.

In addition, we do not believe that the requested instruction or the exception thereto made by defendants was sufficient to alert the trial court to any law that should have been instructed upon.

As mentioned by plaintiff, in his brief, there is a body of federal law dealing with a qualified immunity from liability for damages in 42 U.S.C. § 1983 actions, which is available to various types of government officials. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Hostrop v. Board of Junior College*, 523 F.2d 569 (7th Cir. 1975); *Donovan v. Reinbold*, 433

F.2d 738 (9th Cir. 1970); *MacMurry v. Board of Trustees*, 428 F.Supp. 1171 (M.D. Pa. 1977); *see Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). We need not determine whether under the evidence in this case an instruction in conformity with this line of cases would have been appropriate, because defendants' requested instruction and exception thereto were insufficient to alert the trial court to this line of cases.

At no time did defendants inform the trial court that they were relying on any of the above–cited implied immunity cases. Even on appeal defendants ignore that line of authority. Also, defendants' requested instruction does not correctly state the law of those cases, nor does it sufficiently reflect those statements of the law commonly identifiable with implied immunity cases to have directed the court's attention thereto.

We find no error here.

■ IX. *The instructions as a whole.* Defendants finally contend the jury instructions taken as a whole were confusing, contradictory and inconsistent. However, as to some of the instructions now complained about, no proper record was made in the trial court to preserve error here. Also, the court's post–trial grant of a directed verdict for defendants on counts II and V of plaintiff's petition rendered harmless other claimed cumulative errors. We do not agree with defendants that the jury instructions taken as a whole were confusing, contradictory and inconsistent.

No reversible error exists here or in the other issues raised in defendants' appeal.

We next consider the issue raised by plaintiff's cross–appeal.

■ X. *Duplication of punitive damages.* The jury returned a verdict for plaintiff: under count IV (the 42 U.S.C. § 1983 action) against defendants Cannon and Caffrey, as individuals, for $10,000 compensatory and $5000 exemplary damages; and under count V (the violation of constitutional due process rights claim) against the board of supervisors as an institution for $10,000

compensatory and $5000 exemplary damages. Both counts were based on the failure to give plaintiff a hearing. However, different defendants were involved. In a post–trial ruling, the court directed a verdict for the defendant Board as to count V as being duplicative of count IV. Plaintiff now concedes the $10,000 compensatory damages award in count V duplicated the compensatory damages award in count IV since it arises out of the same facts and both counts are based on the same measure of damages.

However, plaintiff Blessum claims the court erred in setting aside the $5000 punitive damage portion of the verdict on count V. Plaintiff says the punitive damage awards in counts IV and V are not duplicative. He also reasons, that even though underlying actual or compensatory damages are not awarded, that failure would not bar exemplary damages where actual damage has, in fact, been shown. *Pringle Tax Service, Inc. v. Knoblauch*, 282 N.W.2d 151, 154 (Iowa 1979).

Blessum also says the punitive damage awards of counts IV and V are not duplicative because different defendants are involved. He relies on the following from *Team Central, Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 925 (Iowa 1978):

> There is no doubt that when there are two defendants, there may be separate– and different–punitive damage awards. This is true because the purpose of such damages is to punish the wrongdoer rather than to compensate the victim. The amount necessary to punish one may be entirely inadequate to "hurt" the other. *See Hall v. Montgomery Ward & Company*, 252 N.W.2d 421, 424 (Iowa 1977).

However, in *Teamco* we also said: "Duplicate or overlapping damages are to be avoided." *Id.* We, also, there found that Team Central and Dayton Hudson were one for liability purposes and there should be only one punitive damage award. *Id.*

In the present case defendants Cannon and Caffrey were the only members of the Howard County Board of Supervisors that signed the termination notice of January 19, 1976, and the later Board resolution of April 5 discharging plaintiff. The other Board member did not participate. We do not believe the same conduct of Cannon and Caffrey should cause punitive damage liability on the Board as an institution in addition to themselves.

We may set a punitive damage award aside entirely under proper circumstances to avoid a double recovery, *id.* at 926, and we conclude the trial court was correct here in directing a verdict as to count V, including the punitive damage award.

Because we find no reversible error in this complex and exhaustively tried case, we affirm as to the appeal and cross–appeal.

Costs, other than those stated in Division V, are taxed five–sixths to defendants and one–sixth to plaintiff.

AFFIRMED ON BOTH THE APPEAL AND CROSS–APPEAL.